CHERIE RABEL, Plaintiff-Appellant, v. ILLINOIS WESLEYAN UNIVERSITY, Defendant-Appellee (Phi Gamma Delta, Alpha Deuteron Chapter, a/k/a Fiji, *et al.*, Defendants).—CHERIE RABEL, Plaintiff-Separate Appellee, v. ILLINOIS WESLEYAN UNIVERSITY, Defendant-Appellee and Separate Appellant (Phi Gamma Delta, Alpha Deuteron Chapter, a/k/a Fiji, *et al.*, Defendants-Separate Appellees).

Fourth District   Nos. 4—87—0126, 4—87—0182 cons.

Opinion filed September 30, 1987.

Christ T. Troupis Law Office, of Mendota, and Michael, Best & Friedrich, of Madison, Wisconsin (Donna J. Engels and James R. Troupis, of counsel), for Cherie Rabel.

Thompson, Strong, Blakeman & Schrock, Ltd., of Pontiac (C. Thomas Blakeman, of counsel), for Illinois Wesleyan University.

James C. Wollrab, of Costigan & Wollrab, of Bloomington, for appellee Jack Wilk.

Livingston, Barger, Brandt & Schroeder, of Bloomington (James R. Ensign, of counsel), for appellee Phi Gamma Delta.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

On April 30, 1984, plaintiff, Cherie Rabel, filed a complaint in the circuit court of McLean County against defendants Illinois Wesleyan University, Phi Gamma Delta fraternity, Alpha Deuteron Chapter, a/k/a Fiji, and Jack Wilk. The complaint alleged that on May 1, 1982, plaintiff was a student at defendant Illinois Wesleyan University (university) in Bloomington, Illinois. At that time, plaintiff resided in Pfeiffer Hall dormitory on the university's campus. Defendant Phi Gamma Delta fraternity, Alpha Deuteron Chapter, a/k/a Fiji (fraternity), was a fraternity associated with the university. Defendant Jack Wilk was also a student at the university at the time in question and was a member of the fraternity.

Plaintiff's complaint alleged that at approximately 3 p.m. on May 1, 1982, the plaintiff was in her room at the dormitory and was called by Wilk to come to the lobby of the dormitory. Plaintiff's complaint further alleged that when she arrived in the lobby, Wilk "forcibly grabbed [her] and threw her over his shoulder." Wilk "then ran, with

[plaintiff] over his shoulder, out of the building onto a sidewalk leading to the street, the sidewalk being situated on the campus of Illinois Wesleyan University." Upon leaving Pfeiffer Hall with the plaintiff over his shoulder, Wilk "was to run through a gauntlet of [fraternity] members who would strike him with bones as he passed." As Wilk ran he "tripped, stumbled, lost control, slipped and otherwise fell crushing the skull, head and body of [plaintiff] on the sidewalk."

The complaint alleged that prior to arriving at Pfeiffer Hall, Wilk and other fraternity brothers had been participating in a "lengthy party" sponsored by the fraternity "at which members of the fraternity drank alcohol, painted themselves and otherwise conducted a lengthy and boisterous party." Wilk had been "drinking alcohol excessively at the fraternity and had participated in the lengthy party."

The complaint further alleged that plaintiff sustained injuries to "her head, body and limbs both externally and internally, and the bone in her head was broken, and she suffered a basilar skull fracture," and a "brain concussion." The complaint alleged that the brain injury caused "complete loss of the sense of smell [and] *** loss of certain hearing functions." As a result of the injuries plaintiff allegedly incurred expenses for doctor bills, surgical treatments, medicine, and nursing care. Further, she alleged that her ability to work and her earning capacity were impaired.

Counts I, II, and III of plaintiff's complaint alleged negligence on the part of Wilk, the fraternity, and the university, respectively. Counts IV, V, and VI alleged wilful and wanton misconduct on the part of each defendant and sought punitive damages.

Two defendants, the fraternity and the university, both filed motions to dismiss the counts against them in plaintiff's original complaint.

Then on September 13, 1984, plaintiff filed her first-amended complaint. This complaint realleged all counts contained in her original complaint and alleged two additional counts against the university, one count alleging liability based upon a landlord-tenant relationship, and a count alleging premises liability.

Subsequently, all three defendants filed motions to dismiss the counts against them in plaintiff's first-amended complaint. Following hearings on the motions, the trial court dismissed counts I and IV against Wilk with leave to amend and the court dismissed counts II and VII against the fraternity with leave to amend. Additionally, the court dismissed the remaining counts against the university with prejudice.

On June 5, 1985, plaintiff filed her second-amended complaint.

This complaint contained counts against Wilk, the fraternity, and, in addition, the complaint named the individual members of the fraternity as defendants. Plaintiff sought and was granted leave to amend counts III, IV, V and VIII of her first-amended complaint against the university.

Then on October 19, 1985, plaintiff filed her third-amended complaint. This complaint contained counts alleging negligence and wilful and wanton misconduct against both Wilk and the fraternity, including its individual members. In addition, the complaint contained five counts against the university. These included: count III, which alleged negligence; count IV, which alleged liability based upon a landlord-tenant relationship; count V, which alleged premises liability; and counts VIII and IX, which alleged wilful and wanton misconduct and sought punitive damages.

Thereafter, all three defendants filed motions to dismiss. After a hearing, the trial court ruled with respect to the university that the premises liability count against the university (count V) should be dismissed with leave to amend, based on a failure to allege how any defect caused the fall. The trial court dismissed the remaining counts against the university (counts III, IV, VIII, and IX) with prejudice, finding the university had no duty under the circumstances to protect the plaintiff from the alleged misconduct.

On March 6, 1986, plaintiff filed a motion pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) for a finding that there was no just reason for delaying enforcement or appeal of counts III, IV, VIII, and IX of her third-amended complaint. This motion was denied on May 30, 1986.

Subsequently, plaintiff filed her fourth-amended complaint. In addition to the negligence and wilful and wanton counts against Wilk, the fraternity and the individual fraternity members, the complaint contained one count against the university alleging premises liability (count III). This complaint did not reallege or adopt the four counts from the third-amended complaint against the university that had been dismissed with prejudice.

On December 3, 1986, the university filed a motion for summary judgment as to count III in plaintiff's fourth-amended complaint.

Sometime thereafter, the plaintiff, Wilk and the fraternity (including its members) reached a proposed settlement agreement, whereby each of the two defendants would contribute $25,000 in return for a release upon the entry of a good-faith finding by the trial court. The university filed an "objection to good faith finding for proposed settlement agreement," arguing that the defendants were not contributing

their *pro rata* share of the common liability. The plaintiff, Wilk and the fraternity filed a "stipulation for dismissal." The stipulation for dismissal stated that a settlement had been reached and that the settlement was made in good faith pursuant to section 2 of the Contribution Among Joint Tortfeasors Act (Act) (Ill. Rev. Stat. 1985, ch. 70, par. 302). The stipulation indicated that Wilk and the fraternity should be dismissed with prejudice. The parties moved for a finding by the trial court that the aforementioned settlement was made in good faith.

A hearing was held on the motion for approval of the settlement and on the university's motion for summary judgment. At the conclusion of the hearing the court found that the $25,000 settlement by both Wilk and the fraternity, totalling $50,000, was made in good faith and should be approved pursuant to section 2 of the Act (Ill. Rev. Stat. 1985, ch. 70, par. 302). Thus, defendants Wilk and the fraternity, including its members, were dismissed with prejudice. As to the university's motion for summary judgment, the court found that there was no duty owed to the plaintiff by the university and no issue as to the negligence of the university. Thus, the court entered summary judgment in favor of the university and against the plaintiff as to count III of plaintiff's fourth-amended complaint (formerly count V of the third-amended complaint).

On February 20, 1987, the plaintiff filed a notice of appeal from, *inter alia,* the dismissal with prejudice of counts III, IV, VIII, and IX of her third-amended complaint against the university. On March 2, 1987, the university filed a notice of separate appeal, pursuant to Supreme Court Rule 303(a)(3) (107 Ill. 2d R. 303(a)(3)), from the order of the trial court finding that the settlement between plaintiff, Wilk, and the fraternity had been made in good faith (case No. 4—87—0182). These two cases have been consolidated for purposes of appeal on motion by this court.

CASE No. 4—87—0126

Plaintiff contends that the dismissal of counts III, IV, VIII, and IX of her third-amended complaint, against the university, "as a matter of law was improper as a motion to dismiss may be granted only upon a showing that no interpretation of the pleadings can result in a favorable verdict to the plaintiff."

■■ When considering a motion to dismiss, the trial court must assume the truth of all facts properly pleaded (*Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 466 N.E.2d 195; *Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 187

N.E.2d 722), and all reasonable inferences which can be drawn from those facts (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 390 N.E.2d 72). However, mere conclusions of law, argumentative matter, or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest are irrelevant and must be disregarded by the trial court in ruling on a motion to dismiss. (*Pierce v. Carpentier* (1960), 20 Ill. 2d 526, 169 N.E.2d 747; *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) In order to survive a motion to dismiss, a complaint must allege facts which, when considered together, establish the cause of action which the plaintiff seeks to state. (*Segall v. Berkson* (1985), 139 Ill. App. 3d 325, 328, 487 N.E.2d 752, 754.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224; *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790.) The standard of review on appeal is whether the complaint alleged facts which sufficiently state a cause of action. *Carlinville National Bank v. Rhoads* (1978), 63 Ill. App. 3d 502, 380 N.E.2d 63.

In the case at bar, counts III and VIII of plaintiff's third-amended complaint alleged negligence and wilful and wanton misconduct against the university in its capacity as a university. Counts IV and IX alleged negligence and wilful and wanton misconduct against the university in its capacity as a landlord. The trial court dismissed these four counts with prejudice, finding that the university had "no duty to protect plaintiff from the alleged misconduct of a fellow student in this factual situation."

Plaintiff first contends that the trial court erred in dismissing counts III and VIII of her third-amended complaint, asserting that the university had a duty in its capacity as a university to "act reasonably in controlling the activities on its campus through its fraternities and by its students." Specifically, count III of plaintiff's complaint alleged:

"[The university] holds itself out to the public, prospective students and others as a University that does not allow alcoholic beverages on its campus or in its fraternity houses, and as a University whose agents' stated primary concern is the general student welfare.

[The university] by and through its agents and employees stated to [plaintiff and plaintiff's family], the public and prospective students by direct statement and otherwise that the University strictly controlled the activities of its students, in-

cluding a ban on alcohol consumption and further, it represented and held itself out as having a strong religious background with a tradition of strong supervision and control of student activities and a premium price was charged to students as tuition to this private University in reliance upon those statements and others.

[The university] has, by its representations and policies, created a special relationship with its students, including the Plaintiff *** such relationship creating a duty of care to its students, including the Plaintiff ***. [The university's] interest in each student's personal well being, including the personal well being of [plaintiff], and the University's assumption of the responsibility of the student's welfare, including [plaintiff's] welfare, is exemplified by *** the Illinois Wesleyan University bulletin.

* * *

At all times described herein, [the university] was aware of the excessive drinking occurring at the Fiji Fraternity and was aware of the lengthy and boisterous parties and activities associated with that party including the activities at Pfeiffer Hall described herein on May 1, 1982.

[The university], not regarding its duty to the Plaintiff personally and as a student at Illinois Wesleyan University, and its duty to others arising out of its specific representations to [plaintiff and plaintiff's family] the public and prospective students, its stated policies, its customs and practices, its high tuition, and the special relationship between [the university] and its students, failed to take any effective action on April 30, 1982 or May 1, 1982 to discourage the excessive drinking of its students and others, or to discourage the lengthy and boisterous party and activities associated with that party, or to supervise and control said party or to provide adequate protection to the University community at large and to [plaintiff] in particular."

Count VIII realleged the foregoing allegations and also alleged wilful and wanton misconduct on the part of the university.

To survive a motion to dismiss for failure to state a cause of action in negligence, the complaint must set out the existence of a duty owed by the defendant to the plaintiff, the breach of that duty, and injury proximately resulting from the breach. (*Bescor, Inc. v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65, 446 N.E.2d 1209; *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446

N.E.2d 1183.) The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538, 540; *Alm v. Van Nostrand Reinhold Co.* (1985), 134 Ill. App. 3d 716, 718, 480 N.E.2d 1263, 1265.) It is not sufficient that the complaint merely allege a duty, rather the pleader must allege facts from which the law will raise a duty. (*Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 478 N.E.2d 603.) "In determining whether the law imposes a duty, foreseeability of possible harm alone is not the test, for in retrospect almost every occurrence may appear to be foreseeable. The likelihood of injury from the existence of a condition, the magnitude of guarding against it, and consequences of placing the burden upon the defendant must be taken into account. [Citation.]" (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 29, 305 N.E.2d 535, 539; see also *Alm v. Van Nostrand Reinhold Co.* (1985), 134 Ill. App. 3d 716, 718, 480 N.E.2d 1263, 1265.) The absence of allegations of fact from which the law will raise a duty justifies the dismissal of the pleading on motion. *Farmer City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 487 N.E.2d 758.

■ Similarly, to sufficiently plead wilful and wanton misconduct, a plaintiff must allege facts demonstrating a duty of the defendant and a breach of that duty which proximately caused the plaintiff's injury. (*Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 482 N.E.2d 1061.) Wilful and wanton misconduct means a course of action which shows either a deliberate intention to harm or an utter indifference to, or conscious disregard for, the safety of others. (*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 443 N.E.2d 1162.) Wilful and wanton misconduct must be manifested by the facts alleged in the complaint, and mere conclusory allegations or the mere characterization of certain acts as wilful and wanton misconduct are insufficient to withstand a motion to dismiss. 111 Ill. App. 3d 333, 443 N.E.2d 1162.

It is the plaintiff's position that she has alleged facts from which the law will raise a duty. Plaintiff asserts that the university is a "strong disciplined, religious, private, expensive and exclusive University" which due to its policies, regulations and handbook created a "special relationship" with its students and a corresponding duty to protect its students against the alleged misconduct of a fellow student.

In support of her position she first cites cases which have held that a duty once assumed must be performed to a standard of due

care. (*E.g.*, *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Both of these cases relied upon by the plaintiff are distinguishable. First, the *Darling* court, confronted with a medical malpractice case, addressed the duty of hospitals to perform medical services in accordance with the hospital's own standards. (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.) Next, in *Nelson*, the court held that the performance of an inspection created a duty to perform that inspection with due care. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Neither of these cases held, nor has plaintiff cited to any cases which have held, that a university by its regulations or handbook voluntarily assumed a duty to create a "certain safe environment for its students" which "if properly performed would have prevented the injuries in this instance."

■■ ■ Next, plaintiff advances the argument that as a matter of social policy, a defendant who has and exercises the power to control the activities of a person must be held responsible for failing to act reasonably in that capacity. In support of this argument plaintiff cites to *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, and *Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 419 N.E.2d 913. Neither of these cases is controlling here. First, *Kahn* involved an "attractive nuisance" type situation, where a child was injured after entering a construction site and climbing on a stack of boards. The *Kahn* court determined that the expense of setting boards in a fashion that would not collapse on a small child was very minor when weighed against the great likelihood of injury given the presence of children in the area of the construction site. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836; see *Knapp v. City of Decatur* (1987), 160 Ill. App. 3d 498.) Further, *Osborne* involved injuries resulting from "horseplay," where the defendant selected an area in which participants would play football, and a nonparticipating bystander was injured as a result of an errant pass. The *Osborne* court determined that the burden of selecting an area of play free from the presence of nonparticipating individuals was slight when weighed against the magnitude of the harm which could be caused in such a situation. (*Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 419 N.E.2d 913.) Neither *Kahn* nor *Osborne* involved or discussed a university's responsibility to control the activities of its students.

The university contends that counts III and VIII fail to allege the existence of a duty owed by the university to the plaintiff. The university points out that there is no reported decision in Illinois addressing

the issue of whether college regulations place a college in a custodial relationship with its students for purposes of imposing a duty of protection. The university cites to a Federal case which has addressed a similar question. (See *Bradshaw v. Rawlings* (3d Cir. 1979), 612 F.2d 135, *cert. denied* (1980), 446 U.S. 909, 64 L. Ed. 2d 261, 100 S. Ct. 1836.) In *Bradshaw*, the issue was whether a college may be subject to tort liability for injuries sustained by one of its students which were caused by another student who had become intoxicated at a class picnic. The college in *Bradshaw* had a student disciplinary regulation prohibiting the possession or consumption of alcohol by students on college property or at college-sponsored off-campus activities. The activity involved, a sophomore class picnic, was an annual affair and a faculty member assisted in the planning of the picnic and even cosigned a check for class funds used to purchase beer. The plaintiff in *Bradshaw* argued that a disciplinary regulation prohibiting the consumption of alcohol placed the college in a custodial relationship with its students for purposes of imposing a duty on the college to protect the plaintiff; that the college had a certain custodial relationship with its adult students; and that this relationship also imposed a duty to prevent a student from violating liquor control laws whenever those students were involved directly or indirectly in a university activity. The *Bradshaw* court determined that the university did not have a duty to prevent student drinking and the failure of the university's officials to stop a campus drinking party did not constitute an affirmative act of furnishing alcohol. The *Bradshaw* court also commented on the relationship between a college and its students:

> "Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students. Whatever may have been its responsibility in an earlier era, the authoritarian role of today's college administrations has been notably diluted in recent decades. Trustees, administrators, and faculties have been required to yield to the expanding rights and privileges of their students. \*\*\* College students today are no longer minors; they are now regarded as adults in almost every phase of community life. \*\*\* They may vote, marry, make a will, qualify as a personal representative, serve as a guardian of the estate of a minor, wager at racetracks, register as a public accountant, practice veterinary medicine, qualify as a practical nurse, drive trucks, ambulances and other official fire vehicles, perform general firefighting duties, and qualify as a private detective. \*\*\* There was a time when college administrators and faculties assumed a role *in loco parentis*. Stu-

dents were committed to their charge because the students were considered minors. A special relationship was created between college and student that imposed a duty on the college to exercise control over student conduct and, reciprocally, gave the students certain rights of protection by the college. The campus revolutions of the late sixties and early seventies were a direct attack by the students on rigid controls by the colleges and were an all-pervasive affirmative demand for more student rights. In general, the students succeeded, peaceably and otherwise, in acquiring a new status at colleges throughout the country. These movements, taking place almost simultaneously with legislation and case law lowering the age of majority, produced fundamental changes in our society. A dramatic reappointment of responsibilities and social interests of general security took place. Regulation by the college of student life on and off campus has become limited. Adult students now demand and receive expanded rights of privacy in their college life ***. College administrators no longer control the broad arena of general morals. ***

Thus, for purposes of examining fundamental relationships that underlie tort liability, the competing interest of the student and of the institution of higher learning are much different today than they were in the past. At the risk of oversimplification, the change has occurred because society considers the modern college student an adult, not a child of tender years ***.'' (612 F.2d 135, 138-40.)

Thus, the court held that the disciplinary regulation prohibiting consumption of alcohol did not place the college in a custodial relationship with its students for purposes of imposing a duty of protection and that a college regulation which essentially tracked a State law and prohibited conduct already prohibited by State law did not establish a college's voluntary assumption of a custodial relationship imposing a duty of protection. 612 F.2d 135, 141.

The university also cites to *Baldwin v. Zoradi* (1981), 123 Cal. App. 3d 275, 176 Cal. Rptr. 809. In *Baldwin*, the plaintiff brought suit against California Polytechnic State University for injuries sustained in a speed contest involving automobiles occurring after drinking had occurred in a university dormitory. The plaintiff alleged that the university and its employees knowingly permitted other students to possess and consume alcoholic beverages in university residence halls contrary to regulations of the university and failed to take other appropriate steps to control the students consuming the alcohol who

eventually were responsible for causing harm to the plaintiff. The plaintiff further alleged that the foreseeable result of the activity was that the students would become intoxicated and operate motor vehicles, resulting in harm to the plaintiff. The plaintiff attempted to establish liability based upon a failure to enforce the regulations prohibiting alcoholic beverages in university dorms, alleging that the university allowed these students to consume alcohol on campus negligently, which action, when combined with the landlord-tenant relationship, created a duty of care. The trial court in *Baldwin* dismissed the complaint for failure to state a cause of action. The appellate court, relying on *Bradshaw v. Rawlings* (3d Cir. 1979), 612 F.2d 135, determined that the college regulation that mirrored a State law prohibiting the consumption of alcohol did not establish that the college voluntarily assumed a custodial relationship with its students for purposes of imposing a duty of protection.

Finally, the university cites to *Beach v. University of Utah* (Utah 1986), 726 P.2d 413, which considered the duty of a university to its students where alcoholic consumption was involved. The *Beach* court stated:

> "[C]olleges and universities are educational institutions, not custodial. [Citation.] Their purpose is to educate in a manner which will assist the graduate to perform well in the civic, community, family and professional positions he or she may undertake in the future. It would be unrealistic to impose upon an institution of higher education the additional role of custodian over its adult students and to charge it with responsibility for preventing students from illegally consuming alcohol and, should they do so, with responsibility for assuring their safety and the safety of others. [Citations.] Fulfilling this charge would require the institution to babysit each student, a task beyond the resources of any school. But more importantly, such measures would be inconsistent with the nature of the relationship between the student and the institution, for it would produce a repressive and inhospitable environment, largely inconsistent with the objectives of a modern college education." 726 P.2d 413, 419.

We have examined the allegations in the plaintiff's complaint together with the authority cited by the parties in determining whether the plaintiff has alleged facts from which the law will raise a duty under the circumstances of this case. In so doing, we have considered the likelihood of the injury from the existence of the condition here, the magnitude of guarding against it and the consequences of placing

the burden on the defendant. Upon consideration, we do not believe that the university, by its handbook, regulations, or policies voluntarily assumed or placed itself in a custodial relationship with its students, for purposes of imposing a duty to protect its students from the injury occasioned here. The university's responsibility to its students, as an institution of higher education, is to properly educate them. It would be unrealistic to impose upon a university the additional role of custodian over its adult students and to charge it with the responsibility for assuring their safety and the safety of others. Imposing such a duty of protection would place the university in the position of an insurer of the safety of its students. Hence, the trial court properly dismissed counts III and VIII of plaintiff's third-amended complaint with prejudice.

■■ ■ Plaintiff next contends that the trial court erred in dismissing counts IV and IX of her third-amended complaint. Counts IV and IX alleged negligence and wilful and wanton misconduct against the university in its capacity as a landlord. The trial court dismissed these counts finding the university had "no duty to protect plaintiff from the alleged misconduct of a fellow student in this factual situation."

Specifically, count IV of plaintiff's third-amended complaint alleged:

"[The university] is the owner of certain property known as Pfeiffer Hall and [it] rents rooms in that hall and such rental includes the walkways on and in front of the hall where a part of the incident described herein occurred and such rentals are limited to students at [the university], and as such [the] University is a landlord and has the responsibilities of a landlord.

[The university], as a landlord, assumed the responsibility of providing for the security of this tenant.

\* \* \*

[Plaintiff], as a student of [the university], was a tenant of the University at Pfeiffer Hall on or about April 30, 1982 and May 1, 1982, and as such enjoyed the rights and privileges of such status, and became subject to the landlord's regulations, controls and security measures.

[The university], not regarding its duty to the plaintiff as a tenant and resident of Pfeiffer Hall, failed to take any action to protect its tenant and resident from the harmful activities of others."

Count IX realleged the allegations in count IV and also alleged wilful and wanton misconduct.

It is the plaintiff's position that the university, as a landlord, vol-

untarily undertook certain security programs and it was the university's duty to carry out those programs with reasonable care. The university contends that a landlord does not owe a tenant a duty to protect the tenant from harm caused by the intentional or criminal acts of third persons. We agree.

As the university points out, a tenant's complaint against a landlord is required to set out the existence of a duty owed by the landlord to the tenant, a breach of that duty and an injury resulting from the breach. (See *Martin v. Usher* (1977), 55 Ill. App. 3d 409, 371 N.E.2d 69; *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39.) The question of whether or not a legal duty exists is one of law and requires that the occurrence be reasonably foreseeable, more than a mere possibility of occurrence. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) Generally, the landlord-tenant relationship in and of itself does not create a duty on the part of a landlord to protect its tenants from harm caused by intentional or criminal acts of third persons. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596; *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.) Further, a landlord's duty is not to insure the safety of his tenants, but to exercise reasonable care. See generally *Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 448 N.E.2d 1042.

In *Martin v. Usher* (1977), 55 Ill. App. 3d 409, 371 N.E.2d 69, the court discussed section 315 of the Restatement (Restatement (Second) of Torts sec. 315 (1965)) of Torts, which states that there is no duty to control the conduct of a third person to such a degree as to prevent him from causing physical harm to another, unless a "special relationship" exists between the actor and the other. Sections 314 and 320 of the Restatement list certain "special relationships," such as common carrier-passenger, business invitor-invitee, and innkeeper-guest. (Restatement (Second) of Torts secs. 314, 320 (1965); *Martin v. Usher* (1977), 55 Ill. App. 3d 409, 371 N.E.2d 69.) In Illinois the landlord-tenant relationship has not been considered a special relationship which could create the existence of a duty. *Trice v. Chicago Housing Authority* (1973), 14 Ill. App. 3d 97, 302 N.E.2d 207; *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.

While there is no duty in Illinois or at common law upon a landlord to protect tenants from harm caused by the intentional or criminal acts of third parties, by contracting with a third party to provide protection or security services, the landlord may voluntarily assume certain duties. (*Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472; *Carrigan v. New World Enterprises, Ltd.*

(1983), 112 Ill. App. 3d 970, 446 N.E.2d 265.) The cases relied upon by the plaintiff here involved instances where a duty was imposed upon a landlord who contractually agreed or voluntarily undertook to provide security to tenants, but performed the undertaking negligently. In this case, however, plaintiff does not allege that the university contractually agreed or promised to provide protection or security services to the plaintiff. All that is alleged is that the university equipped its building with security devices and provided security personnel. This does not rise to the level of a contractual obligation on the part of the university to provide "protection" from the activities leading to the plaintiff's injuries in this case. Thus, in its capacity as a landlord, the university had no duty to protect its tenants from harm caused by intentional or criminal acts of third parties. Further, the university's duty as a landlord is not to insure the safety of its tenants, but to exercise reasonable care. Accordingly, the trial court properly dismissed counts IV and IX of plaintiff's third-amended complaint with prejudice.

We note that in light of our foregoing determination we need not address the university's waiver argument.

For the foregoing reasons, the judgment of the circuit court of McLean County is affirmed.

CASE NO. 4—87—0182

■■ The university brings this separate appeal arguing that the trial court erred in finding the settlement between the plaintiff and defendants Jack Wilk and Phi Gamma Delta Fraternity was made in good faith pursuant to section 2 of the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, par. 302). Preliminarily, we point out that our decision in case No. 4—87—0126 has rendered the instant appeal by the university moot.

An issue is moot where no actual rights or interests of the parties remain or where events occur which render it impossible for the reviewing court to grant effective relief to either party. (*People ex rel. Hartigan v. Illinois Commerce Com.* (1985), 131 Ill. App. 3d 376, 475 N.E.2d 635; *George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 491 N.E.2d 1160.) Events occurring during the pendency of litigation which "dissipate" the controversy on which the litigation was founded may render the case moot. (*People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 237, 278 N.E.2d 81.) A reviewing court will dismiss a pending appeal where the court has notice of facts which have rendered the question moot. *People v. Lynn* (1984), 102 Ill. 2d 267, 464 N.E.2d 1031; *Bluthardt v. Breslin* (1979), 74 Ill. 2d

246, 384 N.E.2d 1309.

■■■ As we have affirmed the circuit court's judgment in case No. 4—87—0126, dismissing with prejudice counts III, IV, VIII, and IX of plaintiff's third-amended complaint against the university, then no actual interests of the university remain, rendering this appeal moot.

Accordingly, this appeal is dismissed.

Case No. 4—87—0126 is affirmed; case No. 4—87—0182 is dismissed.

GREEN and McCULLOUGH, JJ., concur.