Caroiyn **FREEMAN**, Plaintiff,

v.

Scott **BUSCH**, Gene C. Hildreth, John Hatfield, and Simpson College, a corporation, Defendants.

No. CIV. 1–99–CV–10063.

United States District Court,
S.D. Iowa,
Western Division.

March 5, 2001.

William F. McGinn, McGinn McGinn & Jennings, Council Bluffs, IA, Thomas M. White, Welch White & Wulff, Omaha, NE, for plaintiff.

Maggi Moss, Tammy Westhoff, Parrish Krruidenier Moss Dunn & Montgomery LLP, Des Moines, IA, for Scott Busch, defendant.

Rodney J. Ryan, Des Moines, IA, for Gene C. Hildreth, defendant.

Lori E. Loftsgard, Peddicord Wharton Spencer & Hook PC, Des Moines, IA, for John Hatfield, defendant.

Elizabeth Gregg Kennedy, Steven L. Serck, Nathan J. Overberg, Ahlers Cooney Dorweiler Haynie Smith & Allbee, Des Moines, IA, for Simpson College, defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

LONGSTAFF, Chief Judge.

Before the Court is defendant Simpson College's motion for summary judgment, filed on September 29, 2000. This is a diversity case under 28 U.S.C. § 1332. Plaintiff, Carolyn Freeman ("Freeman"), filed a complaint on December 17, 1999, alleging *inter alia* that Simpson is liable for the negligence of its student employees, Brian Huggins and Scott Busch. The complaint alleges that the actions and omissions of Huggins and Busch resulted in the following injuries to plaintiff: damage to her left arm (Count I), rape (Count II), and sexual assault (Count III). Simpson asserts that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. Plaintiff filed a resistance, and Simpson filed a reply. Although oral argument was requested, the Court finds it unnecessary. The motion is fully submitted.

## I. FACTUAL BACKGROUND

The following facts either are not in dispute, or are viewed in a light most favorable to the nonmovant. The nonmovant is given the benefit of all reasonable inferences that may be drawn from the underlying facts in the record. *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 565 (8th Cir.2000) (citation omitted).[1] On March 21, 1998, plaintiff Carolyn Freeman attended a party on the campus of Simpson College as an invited guest of a Simpson College student, Scott Busch. The party was held in Busch's dormitory room, Room 407 of Buxton Hall. Room 407 was on a "dry floor" during the spring of 1998, meaning that the use of alcohol there was prohibited. While at the party, plaintiff consumed alcohol that had been provided by Busch and others for their guests. She drank vodka and rum, and after consuming at least five ounces of alcohol in a one-hour period, plaintiff became agitated and ill, and vomited several times. At approximately 12:15 a.m.[2] on March 22,

1998, Busch spoke to the Resident Assistant (RA) on duty that night in Buxton Hall, Brian Huggins. Busch informed Huggins that his ex-girlfriend (plaintiff) had been drinking alcohol, was unconscious, and had "passed out" (or something to that effect) on his bed. Busch also told Huggins that plaintiff had been vomiting and had vomited blood once that evening, but that she was not currently vomiting blood.

Although Huggins considered taking plaintiff to the hospital, he did not. Busch told Huggins that plaintiff's parents would kill him if they found out she was in Busch's room and intoxicated. Busch then said that plaintiff was "just sleeping on his bed at the time and was O.K." Huggins could smell the odor of alcohol on Busch's person. He knew that Busch lived on a "dry floor," but did not ask whether he had been drinking, where plaintiff had been drinking, where the alcohol she consumed came from, or whether they were of legal age to drink.[3] Huggins also knew

1. After carefully reviewing plaintiff's statements of material fact together with the cited portions of the record, this Court has determined that several statements are not reasonable inferences from the record. Without attempting to list all such statements, the following may serve as examples. Plaintiff's statement 21 alleges: "Campus security guards are required to report all violations of campus regulations, regardless of whether they are on or off duty." Plaintiff's Statement of Material Facts at 4. The cited portion of the record actually states that security guards possessing information relative to criminal activity or safety hazards shall report these facts immediately. Plaintiff's statements 29 and 31 allege: "Brian Huggins told Scott Busch to watch Carrie Freeman thereby placing him on duty as a Simpson Security Guard" and "Scott Busch was on duty as a Simpson security guard when he raped Carrie Freeman ...." *Id.* at 5. These statements are unsupported by the record.

In other instances, plaintiff cites portions of exhibits which are unsworn testimony. For

example, Busch's recollection of the amount of alcohol plaintiff consumed, *see* Plaintiff's Answers at 1, is supported only by citation to his unsworn testimony in Exhibit 21. Plaintiff's Exhibits 13 and 19, regarding a previous sexual assault investigation, are likewise unsworn testimony and are not considered by this Court for purposes of determining summary judgment. *See* Fed.R.Civ.P. 56(e); *Rill v. Trautman*, 950 F.Supp. 268, 269–70 (E.D.Mo.1996).

2. Although the parties' statements of material fact list the time as 12:15 p.m., this Court believes that the statements are in error because the conversation occurred at night.

3. Brian Huggins knew, or should have known, that the legal age for drinking alcohol in Iowa was 21 in March of 1998. It is against campus regulations for an underage student to consume alcohol on campus. Prior to March 21, 1998, Busch had been found responsible for a violation of Simpson's policy regarding the use of alcohol.

that Simpson had a policy prohibiting overnight visitation in dormitories by members of the opposite sex. Plaintiff claims that Huggins should have known, when speaking with Busch at 12:15 a.m., that he would violate this overnight visitation policy. Plaintiff also disputes defendant's claim that Huggins had no knowledge that Busch or any of his roommates had alcohol in their room.

Huggins told Busch to continue to observe plaintiff and to report back to him if she began vomiting again, and they would take her to the hospital. Before leaving, Busch said that a woman had gone to him seeking protection when a student, John Hatfield, was bothering her. Huggins later stated that he felt plaintiff was in no danger at the time and was in competent hands, but plaintiff believes he was willfully ignorant of facts and circumstances which would have required action on his part. Huggins did not hear back from Busch. He did not physically check on plaintiff, and he never filed an incident report regarding the events Busch reported to him. Sometime after his discussion with Huggins, Busch had sex with plaintiff, and allegedly invited defendants Gene Hildreth and John Hatfield to fondle plaintiff's breasts.

Busch and Huggins both worked as student employees of Simpson Campus Security from time to time while attending Simpson College, including in March of 1998. Huggins was casually familiar with Busch in this capacity, but according to plaintiff, did not know him well enough to form an opinion about his character. Although neither Busch nor Huggins was scheduled to work for Campus Security during March 21–22, 1998, plaintiff contends that because Huggins was a sergeant with Campus Security and an RA in a position of authority over Busch, his orders to Busch were to be obeyed at all times.

Through their employment as security guards, both Busch and Huggins received training in cardiopulmonary resuscitation (CPR) and in the signs of alcohol poisoning. They were trained to recognize that unconsciousness associated with drinking is a symptom of alcohol poisoning, and that alcohol poisoning is an emergency requiring immediate medical attention. In his capacity as a security guard and as an RA, Huggins received training in alcohol poisoning, date rape, and sexual assault. As he was both a security guard and an RA, Huggins was required to be familiar with the policies, procedures, and regulations of Simpson College and of the campus security department. The responsibilities of an RA on duty include making rounds in a dormitory to determine whether policy violations are occurring. Huggins was required to confront student violations of Simpson policies, procedures, and regulations, and according to plaintiff, had no discretion in the discharge of this duty.

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982) (citation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material ... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Discussion

■ Plaintiff seeks to hold Simpson College vicariously liable under the doctrine of respondeat superior, which states that an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment. *Godar v. Edwards,* 588 N.W.2d 701, 705 (Iowa 1999) (citations omitted). A claim of vicarious liability thus requires proof that (1) an employer/employee relationship existed, and (2) the injury occurred within the scope of the employment. *Id.* (quoting *Biddle v. Sartori Mem'l Hosp.,* 518 N.W.2d 795, 797 (Iowa 1994)). For an act to be within the scope of employment, it "must be of the same general nature as that authorized or incidental to the conduct authorized." *Id.* (quoting *Sandman v. Hagan,* 261 Iowa 560, 154 N.W.2d 113, 117 (Iowa 1967)). Although whether an act is within the scope of employment is normally a question for the jury, summary judgment is appropriate where there is no conflicting evidence. *See id.* at 706 (citing *Mary KK v. Jack LL,* 203 A.D.2d 840, 611 N.Y.S.2d 347, 348 (N.Y.App.Div.1994)).

■ If both of the above listed elements apply, Simpson will only be vicariously liable if its employee was negligent. A finding of negligence requires a legal duty owed to the plaintiff, a breach of that duty, proximate cause, and damages. *Hartig v. Francois,* 562 N.W.2d 427, 429 (Iowa 1997) (citations omitted). The threshold element, the existence of a duty

of care, is a question of law properly resolved on summary judgment. *Garofalo v. Lambda Chi Alpha Fraternity,* 616 N.W.2d 647, 650 (Iowa 2000) (citations omitted). In general, the law imposes no affirmative duty upon individuals to act for the protection of others. *Id.* at 652 (citing Restatement (Second) of Torts § 314, at 116 (1965)). In cases where the plaintiff alleges that her injury resulted from a failure to act, the law requires the existence of a "special relationship" between the injured party and the alleged negligent party before a legal duty will be found to exist. *Dettmann v. Kruckenberg,* 613 N.W.2d 238, 251 (Iowa 2000) (citations omitted). Commonly-recognized "special relationships" include common carrier/passenger, innkeeper/guest, landlord/invitee, and peace officer/arrestee. *Garofalo,* 616 N.W.2d at 652 (citing Restatement (Second) of Torts § 314A, at 118 (1965)).

### 1. Brian Huggins

■ Brian Huggins was employed by Simpson College in two different capacities: as a student security guard and as a Resident Assistant (RA). Plaintiff's Statement of Material Facts Which Preclude Summary Judgment [hereinafter "Plaintiff's Statement of Material Facts"] at 1. As described above, vicarious liability requires plaintiff to prove that her injuries occurred within the scope of Huggins's employment, either as a security guard or as an RA. Plaintiff has produced no evidence beyond the pleadings supporting her claim that Huggins was on duty as a security guard when she was injured, or that his actions were otherwise within the scope of his employment with Campus Security. Therefore, her evidence is insufficient to establish a claim of vicarious liability against Simpson with respect to Huggins's role as a security guard. It is undisputed, however, that Huggins was on duty as an RA on the night plaintiff was injured.

Simpson does not claim that Huggins was acting outside his capacity as an RA during the time in question. Defendant's Reply Brief at 1.

### a. Duty

Assuming that respondeat superior applies to Huggins's role as an RA, Simpson College is liable only if Huggins was negligent. Negligence first requires a legal duty owed to the plaintiff. At approximately 12:15 a.m. on March 22, Scott Busch informed Huggins that plaintiff had been drinking alcohol, was unconscious, and had "passed out" (or something to that effect) on Busch's bed. Plaintiff's Answers to Defendant Simpson College's Statement of Undisputed Material Facts [hereinafter "Plaintiff's Answers"] at 2, 3. He also said she had been vomiting and at one point had vomited blood. *Id.* at 2. Instead of summoning medical help, Huggins allowed Busch to continue to look after plaintiff and said to report back to him if she began vomiting again. *Id.* at 4. Plaintiff argues that when presented with this situation, Huggins should have immediately called for an ambulance, and that his failure to do so violated Huggins's duty as defined by Simpson's own procedures. Plaintiff's Resistance Brief at 7. Plaintiff also emphasizes that Brian Huggins, while on duty, was expected to respond to emergency and crisis situations. *Id.* at 5 (citing Plaintiff's Exh. 2 (RA Employment Contract of Brian Huggins), ¶ 3).

■ This Court concludes as a matter of law that Huggins was not negligent because he owed no legal duty to plaintiff. The mere recognition by Simpson that its students would have guests, *id.* at 12, does not give rise to a duty to protect these guests. Plaintiff clarifies that she is not contending a duty existed because Simpson had policies regarding alcohol abuse. *Id.* at 15. She instead contends that a "special relationship" arose because

Simpson undertook to provide supervisory and security services for economic consideration, *id.* at 12, 15–16. Plaintiff cites no case law, however, in support of the proposition that Simpson's provision of supervisory and security services created a legal duty owed to all *guests* of students. Huggins's employment contract for the RA position does not explicitly create such a duty. In *Rabel v. Illinois Wesleyan University,* 161 Ill.App.3d 348, 112 Ill.Dec. 889, 514 N.E.2d 552, 562 (1987), the court concluded that the university's provision of security devices and security personnel did not rise to the level of a contractual obligation to provide protection from activities leading to a student's injuries. Here, the claim of a contractual duty is even weaker because plaintiff is not a student. *See also* Restatement (Second) of Agency § 232 cmt. b (1958) ("One who employs a servant to guard another is not responsible for harm caused to such other by the failure of the servant to act unless the employer is under a duty to protect the other.").

Plaintiff cites § 314A of the Restatement (Second) of Torts for the proposition that a special relationship exists in situations involving common carriers and passengers, innkeepers and guests, possessors of land and invitees, and those who are required by law to take or who voluntarily take the custody of another under certain circumstances. None of these special relationships apply here. Plaintiff argues that landowners have a duty of care to those who enter their premises for business purposes, Plaintiff's Resistance Brief at 16, but plaintiff is not a business invitee. She did not enter Simpson's campus for a business purpose, and instead was there to attend a party. Plaintiff's Answers at 1. Her reliance on *Galloway v. Bankers Trust Co.,* 420 N.W.2d 437 (Iowa 1988), involving a shopping mall held open to the public for business purposes, is thus misplaced. Plaintiff also cites *Tenney v. At-*

*lantic Associates,* but this case is similarly inapplicable because it addresses the legal duty landlords owe to tenants, not guests of tenants. 594 N.W.2d 11, 17 (Iowa 1999) ("We conclude that a landlord, just as any other actor, owes a duty of due care to protect its tenants from reasonably foreseeable harm . . . ."). It is undisputed that plaintiff entered Simpson's premises as a guest of a Simpson student, Scott Busch. She was not a resident or tenant of Buxton Hall, and not even a student at the college.

 Even if Huggins should have realized that action was necessary, "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." *Id.* at 15 (quoting Restatement (Second) of Torts § 314, at 116 (1965)). Absent a legal duty, Simpson College is not vicariously liable for the injuries plaintiff incurred while on its campus. This decision is consistent with the recent decisions of the Iowa Supreme Court in *Garofalo v. Lambda Chi Alpha Fraternity,* 616 N.W.2d 647, 654 (Iowa 2000) (holding that neither a national fraternity nor its Iowa chapter had a duty to protect a student from his decision to drink following a fraternity activity),[4] and *Jain v. State of Iowa,* 617 N.W.2d 293, 300 (Iowa 2000) (concluding that university had no legal duty to student who committed suicide). Colleges are not insurers of the safety of their students, much less their guests. *See Rabel,* 112 Ill.Dec. 889, 514 N.E.2d at 560–61 (stating it would be unrealistic to impose upon a university the responsibility for assuring the safety of its adult students and the safety of others). A college is an educational institution, not a custodian of the lives of each adult, both student and non-student, who happens to enter the boundaries of its campus. A contrary result "would directly contravene the competing social policy of fostering an educational environment of student autonomy and independence." *Univ. of Denver v. Whitlock,* 744 P.2d 54, 62 (Colo.1987).

Plaintiff's alternative argument that Brian Huggins assumed a duty of care by "taking charge" of her is also without merit. Section 324 of the Restatement (Second) of Torts states:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

Restatement (Second) of Torts § 324 (1965). This rule applies to an actor who takes charge of a person who is drunk. *Garofalo,* 616 N.W.2d at 655 (citing Restatement (Second) of Torts § 324 cmt. b (1965)). In *Garofalo,* one of the plaintiff's fraternity brothers, Timothy Reier, permitted plaintiff to lie down on the couch in Reier's room and "sleep it off." *Id.* Reier went out at midnight and upon his return

---

4. The court also referred to cases against universities involving alcohol, stating:

> In analogous cases in which parents have sought to hold universities responsible for injuries resulting from the drinking habits of their adult but underage children, the majority of courts have held that the adoption of institutional policies prohibiting underage drinking do not establish custodial relationships between the institution and its students so as to impose a duty of protection on the part of the institution.

*Garofalo,* 616 N.W.2d at 654 (citing *Bradshaw v. Rawlings,* 612 F.2d 135, 141 (3d Cir.1979); *Booker v. Lehigh Univ.,* 800 F.Supp. 234, 237–38 (E.D.Pa.1992); *Beach v. Univ. of Utah,* 726 P.2d 413, 419–20 (Utah 1986)).

at 3:00 a.m., repositioned plaintiff on his side. *Id.* at 656. Reier went to bed, and did not attempt to awaken plaintiff before leaving for an 8:30 a.m. class. *Id.* The court found these facts insufficient to establish a special duty running from Reier to Garofalo based on § 324. *Id.* at 655–56.

■ Here, there is even less evidence to support plaintiff's claim that Huggins "took charge" of her, creating a special duty within the meaning of § 324. Huggins, like Reier, was not responsible for the intoxication. It is undisputed that Huggins did not go to Busch's room to check on plaintiff. Plaintiff's Statement of Material Facts at 4. Instead, he merely allowed Busch to monitor her condition and told him to report back to him if her condition worsened. Plaintiff's Answers at 4. Plaintiff states that Huggins "listened to the problem, received minimal clarification pursuant to minimal questioning, and rendered advice," Plaintiff's Resistance Brief at 17, but cites no case law holding that such action is sufficient to take charge of a helpless person. Because Huggins had no legally recognized duty to aid plaintiff, Simpson is not vicariously liable for his actions or omissions.

b. Causation

■ As an alternative holding, even if Huggins owed a legal duty to plaintiff which he breached by failing to call for medical assistance, the breach was not the proximate cause of plaintiff's injuries. Proximate cause may be decided as a matter of law in exceptional cases. *Rieger v. Jacque,* 584 N.W.2d 247, 250–51 (Iowa 1998) (citations omitted). Conduct or forces may occur after an actor's conduct which relieve the actor from liability because they break the chain of causal events between the actor's negligence and the plaintiff's injury. *Id.* at 251 (citation omitted).

The act of a third person in committing an intentional tort or crime is a su-

perseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Restatement (Second) of Torts § 448 (1965); *see also Brichacek v. Hiskey,* 401 N.W.2d 44, 48 (Iowa 1987) (quoting § 448). Foreseeable intervening forces are within the scope of the original risk, and therefore do not relieve the defendant from liability. *Stevens v. Des Moines Indep. Cmty. Sch. Dist.,* 528 N.W.2d 117, 119 (Iowa 1995); Restatement (Second) of Torts § 449 (1965).

■ In the present case, the independent actions of defendants Busch, Hildreth, and Hatfield were superseding causes relieving Simpson of liability. According to plaintiff, Busch "dumped" her in "some physical position in which she remained inert for a significant period of time, resulting in permanent neurological damage to her shoulder." Plaintiff's Resistance Brief at 3. She also alleges that Busch raped her and that he invited Hildreth and Hatfield to fondle her breasts. *Id.* Even if Huggins was negligent in failing to summon medical help, these intentional acts by third parties are not normal consequences of his negligence. Injury due to alcohol poisoning may have been reasonably foreseeable, but shoulder damage, rape, and sexual assault are not. One may assume that others will obey the law. *Roadway Express, Inc. v. Piekenbrock,* 306 N.W.2d 784, 786 (Iowa 1981); Restatement (Second) of Torts § 302B, cmt. d (1965). Viewing all the evidence in the

light most favorable to plaintiff, this Court does not believe that Huggins realized or should have realized the likelihood that such a situation might be created, and that Busch, Hildreth, and Hatfield might avail themselves of the opportunity to injure plaintiff. Therefore, even if Huggins breached a legal duty owed to plaintiff, Simpson is not liable because the actions of Busch, Hildreth, and Hatfield were superseding causes of plaintiff's injuries.

2. Scott Busch

 Plaintiff also seeks to hold Simpson College vicariously liable under the doctrine of respondeat superior for the actions of Scott Busch. Busch, like Brian Huggins, worked for Simpson as a student security guard. The conduct of a servant is not within the scope of employment, however, unless it occurs substantially within the authorized time and space limits. Restatement (Second) of Agency § 228(1)(b), (2) (1958). Plaintiff has failed to produce evidence creating a genuine issue of material fact that Busch was on duty as a security guard when she was injured. He was not scheduled to work at the time. Plaintiff's Answers at 7. Plaintiff claims that Huggins placed Busch on duty by delegating her care to him, Plaintiff's Resistance Brief at 10–11, but no evidence in the record supports her assertions that Huggins had the authority to place a fellow security guard on duty or that he in fact did so. In contrast, defendant's evidence indicates that Huggins did not have the authority to place himself or any other student security guard on duty or on call. Defendant's Exh. 6 (Affidavit of Rebecca A. Moser), ¶¶ 4, 6. "Unless a servant has power to employ an assistant of his own or to delegate his duty to another servant, the one to whom the servant entrusts his work is not the servant of the master, and the master is not liable for the acts of such a person ...." Restatement (Second) of Agency § 221 cmt. d (1958). Because plaintiff has not shown that her injury occurred within the scope of Busch's employment, vicarious liability cannot rest on his actions.

III. RULING AND ORDER

Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.