Steve **HOLLINGSWORTH** and Cheryl Hollingsworth, Appellants,

v.

Rodney A. **SCHMINKEY**, Steven D. Woodford, Susan C. Woodford, and State Farm Automobile Insurance Company, Appellees.

No. 95–1331.

Supreme Court of Iowa.

Sept. 18, 1996.

Donald G. Beattie and Ed Skinner of Skinner & Beattie, P.C., Altoona, for appellants.

Michael H. Adams, Des Moines, for appellee Schminkey.

Stanley J. Thompson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellees Woodfords.

Mark L. Tripp and Karl T. Olson of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee State Farm.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

Steve Hollingsworth alleges he suffered injuries on February 13, 1993, while rescuing Rodney A. Schminkey from his burning uninsured station wagon. Hollingsworth[1] brought suit against (1) his insurer State Farm Automobile Insurance Company (State Farm), (2) Rodney A. Schminkey, and (3) Steven D. and Susan C. Woodford. Hollingsworth's suit against State Farm arose from the uninsured motorist coverage provisions of the insurance policy issued to him. His suit against Schminkey alleges a tort claim based on the negligent operation and maintenance of his vehicle. His suit against the Woodfords alleges a tort claim based on premises liability.

Hollingsworth filed a motion for adjudication of law points against State Farm. *See* Iowa R.Civ.P. 105. State Farm filed a resistance to Hollingsworth's motion and filed a separate motion for summary judgment against Hollingsworth. Following a hearing, the district court granted summary judgment in favor of State Farm.

Schminkey and the Woodfords then filed motions for summary judgment, which were resisted by Hollingsworth. Following a hearing, the court granted summary judgment in favor of Schminkey and the Woodfords.

Hollingsworth filed timely notice of appeal as to the court's rulings and summary judgments. We reverse in part and affirm in part the summary judgment granted to State Farm; we reverse the summary judgment granted to Schminkey; and we affirm the summary judgment granted to the Woodfords.

---

1. Steve's wife, Cheryl, joined Steve in all claims brought against defendants. However, to maintain consistency and simplicity throughout this opinion, all references to "Hollingsworth" refer to Steve.

## I. *Summary Judgment.*

A party moving for summary judgment has the burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). In ruling upon the motion, the court considers the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Id.* When a motion for summary judgment is made and supported as provided by the rule, an adverse party may not rest upon mere allegations or denials of the party's pleadings, but the party's response, by affidavit or otherwise provided, must set forth specific facts showing there is a genuine issue for trial. Iowa R.Civ.P. 237(e). We view the record in the light most favorable to the party against whom the summary judgment was granted. *Ruden v. Jenk,* 543 N.W.2d 605, 607 (Iowa 1996).

## II. *Background.*

At approximately 1:00 a.m. on February 13, 1993, Hollingsworth, along with his neighbor, was traveling west on East University Avenue in Des Moines, Iowa. As they approached the Schminkey residence, they observed smoke coming from the rear of the residence. They stopped to investigate and found that a station wagon, which had collided with the corner of the garage, was on fire.

Upon closer inspection they discovered Schminkey in the front seat, slumped over the steering wheel. They were unable to arouse him. With difficulty, because Schminkey weighed approximately 250 pounds, they removed him from the vehicle and carried him towards the rear of the residence. As the fire spread and became more intense, they carried him to the end of the driveway. A short time later Schminkey was taken to the hospital. Hollingsworth allegedly injured his back while removing Schminkey from his car and carrying him to safety.

Earlier that evening, Schminkey had taken his wife and three children shopping. The driveway from his garage was slippery and rutted. Apparently the muffler on his station wagon was damaged due to the ruts in the driveway. While traveling in the station wagon, one of Schminkey's daughters became ill. Schminkey was not aware that his muffler and tail pipe had been damaged and that carbon monoxide was being emitted into the vehicle. He then drove to a nearby hospital. Before arriving at the hospital, another daughter became ill. When they arrived at the emergency entrance of the hospital, the two children were admitted for treatment. Physicians determined the illness was a result of carbon monoxide poisoning. Schminkey's wife stayed at the hospital with their two daughters, and their son went with his grandmother to her home.

Schminkey decided to drive the station wagon home that evening. His plan was to have the muffler fixed the following morning. He rolled down the window in the station wagon and started home at approximately 10:00 p.m. He remembered driving to his home and pulling into the driveway. The next thing he remembered was waking up in the hospital where he was hospitalized for carbon monoxide poisoning.

Although Hollingsworth did not recall whether the engine was running when he arrived, the officer at the scene prepared an investigative report which noted that after the station wagon struck the corner of the garage, "the vehicle remained running, the left rear tire of the vehicle had spun until it caught fire, engulfing the vehicle and the garage."

The Schminkey family had lived at the location of the incident for several years before the accident. The record title to the property was in Woodfords' name. When the Schminkeys had first moved to this location, they were tenants. In 1991, the Woodfords apparently sold the property to Schminkeys on contract. The contract provided that the buyers were responsible for keeping the improvements in good and reasonable repair.

## III. *Claims Against State Farm.*

Hollingsworth was the named insured under a State Farm car policy that provided $100,000 of uninsured motor vehicle coverage. The policy provided:

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* The *bodily injury* must be caused by an accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*

Hollingsworth alleges in his petition that he was injured as a result of Schminkey's negligent operation and maintenance of his uninsured vehicle. He claims: (1) State Farm breached the terms of the contract in refusing to pay the benefits provided by the policy, (2) State Farm was negligent in failing to pay the benefits and in investigating and determining his policy claim, and (3) State Farm's conduct, in failing to pay benefits and in investigating and determining his claim, was in bad faith. Hollingsworth asks for both compensatory and punitive damages in his negligent breach of contract and bad faith claims.

## A. Contract Claim.

■ In its ruling on State Farm's motion for summary judgment, the district court found "there must be a causal connection, less than the notion of proximate cause, between the use, operation, or maintenance of the uninsured vehicle and the injury." Under the record before it, the court found Schminkey's vehicle was a "but for" cause of Hollingsworth's injury. However, the court concluded "the injury was caused by lifting Schminkey, it was not directly caused by Schminkey's use or maintenance of the car."

■ Determining the legal effect of an insurance policy is a question of law for the court. *Hornick v. Owners Ins. Co.,* 511 N.W.2d 370, 371 (Iowa 1993). We are not bound by the district court's determination of the law or the conclusions reached by the court from the undisputed facts. *See Falczynski v. Amoco Oil Co.,* 533 N.W.2d 226, 230 (Iowa 1995). If the district court applied erroneous rules of law which materially affected its decision, we will reverse. *Id.* On appeal, our task is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 528 (Iowa 1995).

■ When construing the uninsured motorist provisions of an auto policy, we review both the language of the policy and the provisions of section 516A.1 of the Iowa Code. *Hornick,* 511 N.W.2d at 372. The terms of the policy are read together with the terms of the statute, which form a basic part of the policy, to effectuate the intent of the contracting parties. *Mewes v. State Farm Auto. Ins. Co.,* 530 N.W.2d 718, 722 (Iowa 1995). Under the statute, protection is extended to persons "who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle ... because of bodily injury ... caused by accident and arising out of the ownership, maintenance, or use of such uninsured ... motor vehicle." Iowa Code § 516A.1 (1993). Here, the language of the policy and the statute are substantially identical.

Although "arising out of" is not defined in the policy, nor have we defined the statutory phrase, we have construed this phrase in a homeowners policy exclusion. *See Kalell v. Mutual Fire & Auto. Ins. Co.,* 471 N.W.2d 865, 867 (Iowa 1991). In *Kalell* we recognized that, in construing coverage clauses, the words "arising out of" are given a broad, general, and comprehensive meaning. *Id.* "[The words] are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between injury and risk for which coverage is provided." *Id.* A policy provision covering injury "arising out of the use of the vehicle" conveys a more liberal concept of causation than "proximate cause" in its traditional legal sense. *Dairyland Ins. Co. v. Concrete Prods. Co.,* 203 N.W.2d 558, 561 (Iowa 1973).

■ Our construction of the phrase is also consistent with the construction given by other courts. *See* 7 Am.Jur.2d *Automobile Insurance* § 194, at 700–01 (1980). Although the phrase imports a concept of causation, the words are of much broader significance than "caused by." *Id.* at 703. However, "the mere fact that an automobile is the situs of the accident is insufficient to establish the necessary nexus between the use and the accident to warrant the conclu-

sion that the accident arose out of such use." *Id.* at 704. *See also* Larry D. Scheafer, Annotation, *Automobile Liability Insurance: What Are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle,* 15 A.L.R.4th 10 (1982); 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 11.4, at 531 (2d ed. 1992) (the use of the uninsured vehicle must relate relatively directly to the accident that caused the claimant's injury).

We believe there is a genuine issue for trial upon Hollingsworth's insurance policy claim. Based on the facts in the record, a jury could find that Hollingsworth is legally entitled to recover damages from Schminkey for the bodily injury caused by the accident arising out of the operation, maintenance, or use of Schminkey's uninsured vehicle. Schminkey used his uninsured station wagon after learning the exhaust system had been damaged and carbon monoxide was being emptied into the passenger area. He became asphyxiated while driving the vehicle into his garage. The motor continued to run after the vehicle hit the corner of the garage. The tires continued to rotate until they became so hot they generated smoke and then a fire. Hollingsworth was injured while removing Schminkey from the burning station wagon. A jury might also conclude that Hollingsworth's act of lifting Schminkey is not an intervening act or force that breaks the chain of causal events between Schminkey's negligent operation of his vehicle and Hollingsworth's injury. Summary judgment should not have been granted to State Farm on this contract claim.

### B. Tort Claims.

■ We find the district court's summary judgments in favor of State Farm on the negligence and bad faith claims should be affirmed for two reasons. First, Iowa does not recognize a cause of action for negligent failure to pay or investigate an insurance claim. Hollingsworth claims that State Farm negligently failed to pay uninsured benefits or negligently investigated and determined the insured's entitlement to benefits. In *Reuter v. State Farm Mutual Auto-*

*mobile Insurance Co.,* 469 N.W.2d 250, 254 (Iowa 1991), we held:

> an insurer's ... negligent failure to investigate or evaluate a claim is only an element by which insured may prove that no lawful basis for refusal existed. The insurer's "subpar" investigation cannot in and of itself sustain a tort action for bad faith.

*Reuter,* 469 N.W.2d at 254.

■ Second, Hollingsworth did not challenge on appeal the court's ruling on the negligence and bad faith claims against State Farm. He cited no authority and made no arguments in his brief as to any claimed error on these claims. Our appellate rules require a party's brief to state the issue or issues presented for review. *Mueller v. St. Ansgar State Bank,* 465 N.W.2d 659, 659 (Iowa 1991). When a party, in an appellate brief, fails to state, argue, or cite to authority in support of an issue, the issue may be deemed waived. *See* Iowa R.App.P. 14(a)(3).

### IV. *Claim Against Schminkey.*

■ Hollingsworth alleged that Schminkey was negligent in: (1) failing to keep and maintain his vehicle in a proper operating condition, (2) operating the vehicle without taking proper precautions to ensure all exhaust fumes were properly discharged, (3) operating a vehicle not in proper working condition, (4) operating the vehicle in a careless manner without regard to safety of other persons, and (5) failing to keep the surfaces of his driveway in good and safe condition. He alleges that Schminkey's negligence was a proximate cause of the accident and the resulting injury and damage to him. Schminkey denied the allegations.

In his motion for summary judgment, Schminkey stated that the injuries and damages were caused by Hollingsworth's act of lifting Schminkey, not the manner in which he operated, maintained, or used his vehicle. In his supporting statement, Schminkey cited the district court's ruling on the State Farm claim.

The district court considered the concepts of foreseeability and proximate cause. It recognized:

When conduct or forces occur after an actor's conduct, the actor may be relieved of liability, even when his conduct is a cause-in-fact of the injury, if a court finds the later occurring conduct is such as to break the chain of causal events between the actor's conduct and the injury.

The court stated "the key question in regard to Schminkey's motion is whether or not the fire constituted a force which occurred after Schminkey's conduct which relieved Schminkey of liability for his decision to drive an unsafe car." Concluding the fire was not a foreseeable consequence of the operation of the vehicle, the court held the fire was a force which relieved Schminkey of liability of his conduct. We do not agree the fire was a superseding event that relieves Schminkey of liability for his conduct.

 Generally, questions of negligence and proximate cause are for the jury; however, in exceptional cases they may be decided as matters of law. Iowa R.App.P. 14(f)(10); *see Ruden*, 543 N.W.2d at 607; *Burton v. Des Moines Metro. Transit Auth.*, 530 N.W.2d 696, 703 (Iowa 1995).

We have discussed the question of proximate cause in many cases. We have stated:

> It is a rule too well established to require the citation of authority, that the question of proximate cause is generally for the jury to determine, although the line of demarcation between what is sufficiently proximate and what is too remote is often a thin one. If upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable, and improbable in the light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic, there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created.

*Henneman v. McCalla*, 260 Iowa 60, 66–67, 148 N.W.2d 447, 451 (1967) (quoting *Chenoweth v. Flynn*, 251 Iowa 11, 17–18, 99 N.W.2d 310, 314 (1959)). In *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 349 (Iowa 1991), we stated:

Factors to consider in determining whether an actor's conduct is a proximate cause of a plaintiff's injury include the proximity and foreseeability of the harm flowing from the actor's conduct, although it is not necessary that the actual consequences of a defendant's negligence should have been foreseen.

When conduct or forces occur after an actor's conduct, however, the actor may be relieved of liability if a court finds that the later-occurring event is such as to break the chain of causal events between the actor's negligence and the plaintiff's injury. This is so even when the actor's conduct is a cause-in-fact of the plaintiff's harm.

(Citations omitted.) We have recently reviewed the requirement of causation in tort actions. *See Gerst v. Marshall*, 549 N.W.2d 810, 813–18 (Iowa 1996). In *Gerst*, we found the majority of our decisions require a plaintiff to meet both the "but-for" test of causation (with the concurrent cause exception) and the Restatement "substantial factor" test. *Id.* at 817.

 A superseding cause is a third party's act or other force that intervenes to prevent the defendant from being liable for harm to the plaintiff that the defendant's antecedent negligence is a substantial factor in bringing about. *See* Restatement (Second) of Torts § 440 (1965); *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 15 (Iowa 1977). "An intervening force is one which actively operates to produce harm to another after the actor's negligent act or admission has been committed." Restatement (Second) of Torts § 441(1). We have approved the considerations in determining whether an intervening force is a superseding cause, as identified in Restatement (Second) of Torts section 442. *Iowa Elec. Light & Power Co. v. General Elec. Co.*, 352 N.W.2d 231, 235–36 (Iowa 1984). It is clear that not all intervening forces become superseding causes:

> The intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about.

Restatement (Second) of Torts § 443. To relieve an individual from liability, the intervening act or force must not have been a normal consequence of his or her acts or have been reasonably foreseeable. *Haumersen,* 257 N.W.2d at 15. In other words, an intervening force which falls squarely within the scope of the original risk will not supersede the defendant's responsibility. *Stevens v. Des Moines Indep. Community Sch. Dist.,* 528 N.W.2d 117, 119 (Iowa 1995).

In *Stevens,* plaintiff was attending middle school when he was physically assaulted by another student. He sued the school district, alleging it failed to: warn its students of danger, control its students, and properly supervise the premises. The jury was instructed that if the plaintiff's injuries resulted from unforeseen and sudden acts of another pupil, these acts would be a superseding cause of the injury, and the negligence of the school district could not be the proximate cause. The jury found that the school was negligent, but that its negligence was not a proximate cause of plaintiff's injuries. We held the superseding cause instruction should not have been given. *Id.* A defendant is not relieved from liability by the fact that the risk to which the defendant has subjected the plaintiff has indeed come to pass. *Id.*

To summarize, in order for an act or force to be a superseding cause, thereby relieving a negligent defendant from liability, the intervening force must not have been reasonably foreseeable. "Generally, where the defendant's negligence has created a stimulus for the plaintiff's act there is no break in the chain of events which would prevent the negligent defendant's liability." 57A Am.Jur.2d *Negligence* § 650, at 607 (1989).

The principles of intervening forces and superseding causes must be carefully applied when a "rescue" is involved. In most cases, the person being rescued is not relieved of liability. Under the "rescue doctrine"

> efforts to protect the personal safety of another have been held not to supersede the liability for the original negligence which has endangered it. . . . There is . . . an independent duty of care owed to the rescuer, which arises even when the defendant endangers no one's safety but the

defendant's own. The rule is not limited to spontaneous or instinctive action, but applies even when there is time for thought. And whether the person injured in the attempt at rescue is the rescuer, or the person rescued, or a stranger, the original wrongdoer is still liable.

W. Page Keeton et. al., *Prosser & Keeton on the Law of Torts* § 44, at 307–08 (5th ed. 1984). Restatement (Second) of Torts section 445, in a special application of the rule stated in section 443, addresses these situations in which the conduct of a person has created a danger only to himself or herself, but where it is reasonable to anticipate that others might attempt to rescue him or her from the self-created peril, and sustain harm in doing so. Section 445 provides:

> If the actor's negligent conduct threatens harm to another's person, land, or chattels, the normal efforts of the other or a third person to avert the threatened harm are not a superseding cause of harm resulting from such efforts.

An illustration of section 445 states:

> *A* negligently drives a tank truck full of gasoline so that it goes off of the highway and is wrecked. *A* is knocked unconscious, and the truck catches fire. *B,* a bystander, attempts to rescue *A* from the burning truck, and while he is doing so the gasoline explodes, injuring *B.* *A* is subject to liability to *B.*

Under the record, a court or jury could infer from the undisputed facts that Schminkey drove his station wagon with knowledge that the exhaust system was defective, causing carbon monoxide to be emitted into the passenger area. It was reasonably foreseeable that he or others could be harmed by his action. The fire that alerted Hollingsworth was a foreseeable risk of Schminkey's operation of the defective vehicle, not a superseding act or event. A reasonable jury could find that Hollingsworth's rescue of Schminkey was an act done in normal response to the fear or emotional disturbance caused by Schminkey's negligence. Summary judgment should not have been granted to Schminkey.

### V. *Claim Against Woodfords.*

 Hollingsworth alleges in his petition that Woodfords were negligent in failing to keep and maintain the driveway in good and safe condition. In their answer and motion for summary judgment, Woodfords allege they had sold the property on contract to Schminkey over two years before the accident and, therefore, they did not occupy or control the premises. Additionally, they claim there was no causal relationship between the driveway condition and Hollingsworth's injuries. Woodfords attached affidavits and a copy of the real estate contract to support their allegations that the property had been sold.

In its ruling on Woodfords' motion, the court recognized that Schminkey's vehicle came in contact with the rutted driveway as it left the premises on February 13, 1993, causing the muffler to be damaged so that carbon monoxide began to leak into the interior of the station wagon. The court concluded that Schminkey, not Woodfords, had a duty to maintain the property.

 Although the issue of negligence is seldom a matter for summary judgment, the threshold question of a duty being owed is a question of law for the court. *Downs v. A & H Constr., Ltd.*, 481 N.W.2d 520, 522 (Iowa 1992). An owner who sells property loses control of the use of the property and is no longer liable for injury to others on the property. *Stalter v. Iowa Resources, Inc.*, 468 N.W.2d 796, 798 (Iowa 1991).

Hollingsworth did not support his resistance with affidavits. In his brief in resistance to Woodfords' motion for summary judgment, he referred to deposition testimony of Schminkey that he considered Sue Woodford to be the true owner. In this same deposition, however, Schminkey testified that he thought he was buying the property, not renting it; that he had sole control of the house and property; and that he was responsible for maintaining it. He signed the real estate contract to purchase the property sometime in 1991 and made payments on the real estate contract to Woodfords.

Woodfords' motion for summary judgment was supported with affidavits that established they had sold the property on contract to Schminkey in 1991 and that, at the time of the accident in February 1993, Woodfords did not occupy or control the property. Woodfords were not possessors of the land, and they had no duty to keep or maintain the driveway in a good and safe condition. Under these circumstances, Woodfords are entitled to summary judgment.

Summary judgment granted to State Farm on the contract claim is reversed; summary judgment granted to State Farm on the tort and bad faith claims is affirmed; summary judgment granted to Schminkey is reversed; and summary judgment granted to Woodfords is affirmed.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**