**Lois K. RIEGER, Appellant,**

v.

**Don JACQUE and The Principal Mutual Life Insurance Company, Appellees.**

No. 96–1779.

Supreme Court of Iowa.

Sept. 23, 1998.

Alexander R. Rhoads and Robert K. DuPuy of LaMarca & Landry, P.C., West Des Moines, for appellant.

Michael A. Giudicessi, Kasey W. Kincaid, and Theresa H. Keninger of Faegre & Benson, L.L.P., Des Moines, for appellee Principal Mutual Life Insurance Company.

Gary N. Jones of Truax & Jones, Cedar Falls, for appellee Don Jacque.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

The district court correctly granted summary judgment in favor of defendants, an insurance company and its agent, in this suit alleging negligence in preparing an estate plan. Trusts recommended by the agent, as later created by an attorney, brought on disastrous tax consequences. Although the trial court holding could perhaps be affirmed as well on two alternative bases, we rely on just one. Assuming without deciding the defendant agent owed a duty to the plaintiff regarding advice in the matter, there is no showing his negligence was a proximate cause of the claimed damages.

Plaintiff Lois K. Rieger and defendant Don Jacque became acquainted while working in the same office building in Waterloo. Jacque sells insurance as an agent for defendant The Principal Mutual Life Insurance Company (Principal). During their acquaintance Rieger, a real estate broker, helped Jacque with real estate transactions, and Jacque sold Rieger insurance and annuities through Principal.

In 1984 Jacque approached Rieger concerning her need for estate planning, especially in view of tax implications at the time of her death. Jacque suggested that an irrevocable trust would reduce her estate taxes at death, while allowing her to control her trust property and retain income during her lifetime. Jacque's solicitation was of course meant to induce Rieger to purchase life insurance. Jacque explained that the estate planning assistance was a service offered by Principal for its customers.

Rieger, with Jacque's assistance, then prepared an inventory which was sent to Principal's underwriting department. The inventory, which included some of Jacque's handwritten notes, listed Rieger's assets and recited her financial goals. Rieger reasonably believed Principal was doing estate planning for her and assumed Jacque would be paid for his estate services and advice by commissions on any insurance she might purchase in connection with the estate plan.

Principal's underwriting team reviewed the inventory and sent a report to Jacque who then provided it to Rieger. A crucial aspect of the report was an estimate of the amount of cash needed to meet estate transfer expenses. The report went on to discuss irrevocable trusts and their purpose in estate planning. It concluded by recommending the purchase of $400,000 life insurance to fund the plan. It went on to state:

> It is not our suggestion that these are the most acceptable or best solutions to all the estate transfer problems confronting Lois. Recommendations regarding the use of estate planning devices and techniques, except to the extent that insurance may be involved, must originate with the estate owner's attorney. The preparation, revision or review of legal instruments will also, of course, be the attorney's responsibility.

The report also included the following disclaimer:

> It must be kept in mind that we are not authorized to practice law and any legal services or advice a client may need must be obtained from her attorney. A copy of this report will be made available to your client's attorney or to any of her other professional advisors upon request.

Jacque assured Rieger that she could realize her goals (the reduction in estate taxes while maintaining control of trust property and its income) by preparation of an irrevocable trust. Based on this advice and the special report, Rieger had Jacque set up a meeting with attorney Lawrence Stumme, Jr. to prepare a trust.

Jacque attended Rieger's first meeting with Stumme, but did not at that time contribute any advice regarding tax matters. Rieger and Stumme discussed creation of an insurance trust (trust funded by life insurance), as outlined in the special report, but ultimately this kind of trust was not created. Rieger made it clear she wanted to retain control of the property which would fund the trust and to use its income. Although she never had any contact with anyone at Principal regarding the inventory, she did review and discuss Principal's special report with Stumme before he began to draft the trust instrument. Stumme in fact did not utilize the material prepared by Principal, and never consulted with Principal. So Principal had no influence on what was to be included in the provisions of the trust instrument.

Rieger ultimately (on December 31, 1984) executed the irrevocable trust prepared by Stumme. The trust was funded only by farmland owned by Rieger. Rieger named herself as trustee. She later executed a family trust dated January 6, 1986. The second trust was funded by a family home so that, again, no insurance policy was used.

In 1993 Rieger first learned that, because she retained control and ownership of the trust, its corpus would be considered a part of her estate at her death and subject to inheritance taxes. She wrote a letter to Jacque, questioning the effect of the trust instrument prepared by Stumme. Jacque sent the letter to Principal headquarters where the consensus of the estate planning experts was that Rieger's objectives were indeed thwarted because she retained control of the property.

Rieger then brought this negligence suit against Principal, Jacque, Stumme and a certified public accountant who assisted Stumme. Only the claims against Principal and Jacque remain at issue. The matter is before us on Rieger's appeal from a trial court order granting summary judgment in favor of Principal and Jacque.

■ I. We review a grant of summary judgment on error. *Gerst v. Marshall*, 549 N.W.2d 810, 811 (Iowa 1996). Summary judgment may be entered if the record shows "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 237(c). We thus "examine the record before the district court to decide whether a genuine issue of material fact exists and whether the court correctly applied the law." *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 354 (Iowa 1995). In doing so, we view the facts in the light most favorable to the nonmoving party. *Gerst*, 549 N.W.2d at 812.

■ Although claims of negligence are seldom capable of summary adjudication, the threshold determination in any tort case is whether the defendant owes the plaintiff a duty of care. *Robinson v. Poured Walls of Iowa, Inc.*, 553 N.W.2d 873, 875 (Iowa 1996); *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 811 (Iowa 1994). Whether such a duty arises out of the parties' relationship is always a matter of law for the court. *Id.*

■ II. The parties vigorously dispute whether Jacque owed Rieger any duty regarding his tax advice. We choose not to resolve this issue and instead rest our affirmance on a second defense. Jacque and Principal correctly contend that, even assuming without deciding Jacque owed Rieger a duty of care and also assuming he breached such a duty, his actions were not a proximate cause of Rieger's injury.[1] Although ques-

---

1. In our analysis of proximate cause, it is important to note that Rieger makes no claim that

tions of negligence and proximate cause are ordinarily for the jury to decide, they may be decided as a matter of law in exceptional cases. Iowa R.App. P. 14(f)(10); *Scoggins v. Wal–Mart Stores, Inc.*, 560 N.W.2d 564, 566 (Iowa 1997); *Ruden v. Jenk,* 543 N.W.2d 605, 607 (Iowa 1996); *Beeman v. Manville Corp. Asbestos Disease Comp. Fund,* 496 N.W.2d 247, 254 (Iowa 1993). This is such a case.

■ The law does not impose liability for negligence unless the breach of a duty of care is also the actual and legal cause of the injury. *Scoggins,* 560 N.W.2d at 567. In exploring causation we consider two components: (1) whether the harm would not have occurred *but for* the negligence of the defendant; and (2) whether the negligence of the defendant was a substantial factor in bringing about the harm. *Id.* This second component implicates the determination of proximate cause. *Id.*

■ We have said this about the first component:

"But for" is an absolute minimum for causation because it is merely causation in fact. Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with. Mere logic and common sense dictates that there be some causal relationship between the defendant's conduct in the injury or event for which damages are sought.

*Id.* (quoted sources omitted). In discussing the second prong we have stated:

[U]pon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable, and improbable in the light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic, there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created.

*Hollingsworth v. Schminkey,* 553 N.W.2d 591, 597 (Iowa 1996) (quoted sources omitted). In examining whether proximate cause exists we look at the "proximity and foreseeability of the harm flowing from the actor's conduct, although it is not necessary that the actual consequences of a defendant's negligence should have been foreseen." *Id.* (quoting *Kelly v. Sinclair Oil Corp.,* 476 N.W.2d 341, 349 (Iowa 1991)).

■ When conduct or forces occur after an actor's conduct, the actor may be relieved from liability if a court finds the later-occurring event breaks the chain of causal events between the actor's negligence and the plaintiff's injury. *Kelly,* 476 N.W.2d at 349. This is true even when the actor's conduct is in fact a cause of plaintiff's harm. *Id.* This break in actual causation is commonly known as a superseding or intervening cause. *Id.* The law considers this type of intervening cause to be the effective cause, and it relieves the defendant from liability for the earlier negligent act or omission. *Id.*

■ A superseding cause is defined as a third-party's act (or other force) that intervenes to protect a defendant from liability for harm to the plaintiff even though that defendant's antecedent negligence was a substantial factor in bringing about the injury. *Hollingsworth,* 553 N.W.2d at 597; *see also* Restatement (Second) of Torts § 440, at 465 (1965). "An intervening force is one which actively operates to produce harm to another after the actor's negligent act or omission has been committed." *Hollingsworth,* 553 N.W.2d at 597 (quoting Restatement (Second) of Torts § 441(1), at 465 (1965)). Not all intervening forces become superseding causes:

The intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about.

*Id.* (quoting Restatement (Second) of Torts § 443, at 472 (1965)). "To relieve an individual from liability, the intervening act or force must not have been a normal consequence of his or her acts or have been reasonably foreseeable." *Id.* at 598. Put another way,

Jacque or Principal were negligent in recom-    mending Stumme.

an intervening force which falls squarely within the scope of the original risk will not supersede the defendant's responsibility. *Stevens v. Des Moines Indep. Community Sch. Dist.*, 528 N.W.2d 117, 119 (Iowa 1995).

The parties cite no authority, and we find none, in which insurance agents have been found liable for their quasi-legal advice when an attorney subsequently handles the matter negligently. There are a handful of cases involving claims of vicarious liability when an attorney, originally acting for a client, associates in the matter with a subsequent attorney who acts negligently. Such a situation is only roughly analogous to the present one because courts would be more likely to attach vicarious liability to an attorney, presumably competent in the legal matter, than to an insurance agent, who would be expected to be less conversant in legal matters. Even so, cases indicate that, had Jacque been an attorney rather than an insurance agent, vicarious liability would not attach on these facts. An attorney can become liable for the negligent acts of a second one only where the two attorneys share the work or divide a fee. *See Gudger v. Manton,* 21 Cal.2d 537, 134 P.2d 217, 224 (1943), *overruled in part on other grounds, Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (1956) (first attorney held vicariously liable for second attorney's defamation because the second attorney was being paid a percentage of the first attorney's fee as opposed to being paid by the client); *Duggins v. Guardianship of Washington,* 632 So.2d 420, 426 (Miss.1993) (holding first attorney liable for second attorney's misappropriation of funds because the relationship between the two attorneys was a joint venture based on the attorneys' agreement to jointly control the case and to split the attorney's fees fifty-fifty).

It is clear that Jacque's negligent tax advice was not a proximate cause of Rieger's injury because Stumme's acts were unquestionably an intervening cause. A lawyer must exercise independent professional judgment on behalf of a client. *Ruden v. Jenk,* 543 N.W.2d 605, 610–11 (Iowa 1996). Stumme personally asked Rieger about her estate planning goals and what she wished to achieve by way of the trust. He did not rely on any materials supplied by Jacque or Principal. The only document he had from the defendant, the special report, contained mere recommendations and provided no information on irrevocable trusts or how trusts should be drafted. Stumme did not rely on the special report, but rather on his discussions with Rieger in determining what type of trust should be created.

Because any negligence on the part of Jacque or Principal was not a proximate cause of Rieger's injuries, the trial court correctly entered summary judgment dismissing the suit.

**AFFIRMED.**