**IN THE COURT OF APPEALS OF IOWA**
No. 15-0406
Filed June 10, 2015

**IN THE INTEREST OF S.P. and A.B.,**
**Minor Children,**

**J.P., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother appeals the termination order with respect to one child and a permanency order with respect to a second child.  **AFFIRMED.**

Donna L. Smith, Dubuque, for appellant.

Bridget Goldbeck of Hughes & Trannell, P.C., Dubuque, for father of S.P.

Dustin Baker of Baker Law Firm, Dubuque, for father of A.B.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Bruce Kempkes, Assistant Attorneys General, Ralph Potter, County Attorney, and Joshua Vander Ploeg, Assistant County Attorney, for appellee.

Gina Kramer of Reynolds & Kenline, L.L.P., Dubuque, attorney and guardian ad litem for minor children.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, J.**

A mother appeals from termination of her parental rights to one child, A.B., and from a permanency order granting sole custody of another child, S.P., to the father. With respect to A.B., she contends the Iowa Department of Human Services (DHS) failed to make reasonable efforts toward reunifying her with the child. She argues she should have had additional time to work towards reunification with A.B. She further contends the State failed to prove the grounds for termination. With respect to S.P., the mother contends the court erred in transferring custody to the father before ordering more efforts toward reunification with her. She argues she should have had additional time to work toward reunification with S.P. She also contends the change of custody is not in the child's best interest. She further contends DHS failed to make reasonable efforts to place the half-siblings together.

We find termination of parental rights to A.B. was appropriate; DHS made reasonable efforts toward reunifying the children with the mother; additional time would not have been appropriate; and the court's placement of S.P. with her father is in her best interest and justifiable cause exists to separate the placements of the siblings. Therefore, we affirm the termination of the mother's parental rights to A.B. and the permanency order with respect to S.P.

## I. BACKGROUND FACTS AND PROCEEDINGS.

There are two children in the present case: S.P., born in 2007, and A.B., born in 2010. S.P. and A.B. have different fathers. The juvenile court terminated the parental rights of A.B.'s father. He is not involved in the present appeal. The

court gave S.P.'s father custody of S.P. Prior to this case, there was no custody arrangement between the mother and S.P.'s father. The mother had the sole care of S.P.

The family has a long history of involvement with the DHS, going back to when S.P. was born. The mother has an extensive history of substance abuse. She has been the perpetrator in seven confirmed child abuse reports, most of them resulting from her using drugs and exposing the children to drugs. While she was incarcerated for three weeks in July and August 2013, the juvenile court placed the children with their maternal aunt and uncle. In the fall of 2013, the mother was participating in voluntary services. She entered an inpatient substance abuse treatment program, but was discharged unsuccessfully. The children were adjudicated in need of assistance (CINA) in October 2013. In November 2013, the mother was arrested and placed in a county jail in Wisconsin. While in jail she completed an inpatient substance abuse program successfully and was released in July 2014. DHS resumed services and visitation of two hours twice a week.

On July 14, 2014, S.P.'s father had completed a thirty-day trial placement of S.P. in his home. On DHS's recommendation, the court placed care and custody of S.P. with the father. On July 21, the mother filed a motion to vacate the custody order arguing the father was an inappropriate placement. In a September 8 dispositional order, the court indicated it would treat the mother's motion as a motion for modification of the disposition and set the motion for hearing. On September 22, the court denied the motion to vacate, finding no

grounds to modify the custody order. The father filed an application for concurrent jurisdiction in the district court to establish a custody, support, and visitation order; the court later granted this motion. On October 6, the State filed a petition for termination of the mother's parental rights to A.B., who was still in placement with the maternal aunt and uncle. The mother filed a motion for return of custody of the two children and increased services. The juvenile court set the petition and the motion for hearing together, along with a permanency hearing for S.P. This hearing was held on November 6 and December 3, 2014.

On January 22, 2015, the juvenile court filed two separate orders: the first terminated parental rights of the mother and A.B.'s father to A.B.; the second was a permanency order confirming custody of S.P. with her father and denying the mother's motion for return of custody. The mother filed motions pursuant to Iowa Rule of Civil Procedure 1.904(2) in both the termination and permanency orders. The court partially granted, but largely denied the motions. The mother appeals.

## II.  STANDARD OF REVIEW.

We review CINA and termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interest of the child. *Id.* at 776.

## III.     ANALYSIS.

### A.     A.B.

#### 1.     Failure to make reasonable efforts.

The mother contends the State and DHS failed to make reasonable efforts to reunite her with A.B.   She complains DHS refused to give her additional visitation time or transportation assistance.   She further complains the court should have extended permanency for six months so that she could continue to work toward reunification.

Prior to termination of parental rights, DHS must make reasonable efforts to reunite the parent and child.   Iowa Code § 232.102(7) (2013); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).   Reasonable efforts are not, however, a "strict substantive requirement of termination."  *C.B.*, 611 N.W.2d at 493.   Although the State has an obligation to provide reasonable services, the parent has an obligation to demand different or additional services the parent may require prior to the termination hearing.  *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999).  If a parent does not request additional services at the appropriate time, the argument that DHS did not make reasonable efforts is waived, and the parent may not later challenge it in the termination proceeding.  *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).  "Moreover, voicing complaints regarding the adequacy of services to a social worker is not sufficient."   *Id.*   "A parent must inform the juvenile court of such a challenge."  *Id.*

The mother claims she preserved error on this issue by objecting to the termination order and filing a motion pursuant to Iowa Rule of Civil Procedure

1.904(2).  The mother's statement of error preservation does not cite any point in the record prior to the termination hearing that she requested additional services. Ordinarily, "[i]t is not our responsibility to search the record to determine if the issue has been preserved for review."  *State v. Truesdell*, 511 N.W.2d 429, 432 (Iowa Ct. App. 1993).  However, on our review of the record and briefs, we note that the mother previously requested an increase in services by motion prior to the termination hearing.  Therefore, despite the mother's failure to adequately state how she preserved error, we will address the merits.

On October 17, 2014, about ten days after the filing of the termination petition and two weeks before the termination hearing, the mother filed a motion for return of custody of A.B. and for increased services.  She requested additional visitation time and approval for the maternal grandparents to supervise visitation if DHS staff was unavailable.  Throughout the case, visitation has been at the discretion of DHS.  The court has not ordered DHS to give the mother more visitation, and DHS has declined to offer more visitation.  The juvenile court set a hearing on the mother's motion contemporaneous with the termination-of-parental-rights hearing.

The State must make reasonable efforts to provide services to a parent before termination proceedings may be instituted.  *C.H.*, 652 N.W.2d at 147. Reasonable efforts are aimed at both preventing and eliminating the need for removal.  *Id.*  What constitutes reasonable services varies based on the circumstances of each individual case.  *Id.*

The mother has an extensive history of DHS involvement in her family. DHS was involved during the first CINA case in 2007 after S.P. was born testing positive for drugs. Services were offered for two years, after which the case was closed. A second case was opened in 2010 when police searched the home and found drugs and evidence of drug dealing around the home and under A.B.'s crib mattress. DHS provided services until the case was closed in 2011. The current case was opened in 2012 when the mother was reported to be using illegal substances in front of the children and A.B. tested positive for drugs. Throughout this case, DHS workers and service providers have noted the mother's poor cooperation with services. She has failed to cooperate consistently with random drug testing, failed to get a job, was discharged unsuccessfully from substance abuse treatment, and has been inconsistent in attending visitation which, the service providers indicate, has been very hurtful to the children. The mother has not attended the children's therapy sessions. The mother also was in jail for several months during this case. Iowa DHS was unable to provide her visitation services while she was in jail in Wisconsin. On several occasions, the mother has appeared to service providers to be under the influence of drugs or alcohol due to her stumbling, slurring her speech, and looking glassy-eyed. The mother admitted she used oxycodone and hydrocodone without a prescription when she gave positive drug tests. Given this history, including the mother's inability or unwillingness to address her substance abuse issues despite three CINA cases and years of services, we fail to see how additional visitation time with the children could have helped her demonstrate readiness to reunify with A.B. We

find DHS made reasonable efforts toward reunification and the mother failed to utilize them.[1]

The mother also contends the juvenile court erred in declining to authorize a six-month extension of time for the mother to work toward reunification. The court may do so, under Iowa Code section 232.104(2)(b), if it determines that "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." The juvenile court determined it could not make such a finding and noted, "Mother has been receiving services since the birth of her first child in 2007 and the same issues still exist today. Accordingly, the Court finds that an extension of time will not alleviate the adjudicatory harms to the extent the child could be returned to [the mother]." The mother complains she had only two or three months to work on reunification given her release from several months in jail in July 2014. This ignores the fact the children had been removed the prior November and she had done little to improve since that time; it also ignores the fact that her own conduct resulted in her incarceration. For the reasons already stated, we agree with the juvenile court's assessment. Nothing about the case or the mother's recent efforts convinces us A.B. could be returned to her within six months. An extension would not have been appropriate.

---

[1] The mother does not indicate in her statement of error preservation where in the record prior to the rule 1.904(2) motion she requested transportation assistance as an additional service. The parent must demand additional services prior to the termination hearing, or the argument is waived. *S.R.*, 600 N.W.2d at 65; *C.H.*, 652 N.W.2d at 148. We find this complaint for the first time in the rule 1.904(2) motion. Therefore, the issue is waived, and we do not address it.

2.      Statutory grounds for termination.

We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence.  *Id.*  When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm.  *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).  The court terminated the mother's parental rights to A.B. pursuant to Iowa Code section 232.116(1)(f) and (*l*).  She challenges termination under subsection (1)(*l*) only on appeal.  Her failure to challenge termination under paragraph (1)(f) waives any claim of error related to that ground.  *See In re D.S.*, 563 N.W.2d 12, 15 (Iowa Ct. App. 1997) (finding principles of res judicata barred a father who failed to appeal a juvenile court order from raising the challenge on appeal); *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("our review is confined to those propositions relied upon by the appellant for reversal on appeal").  Therefore, we affirm the juvenile court's conclusion that termination is appropriate under subsection (1)(f).

**B.      S.P.**

1.      Jurisdiction.

With respect to S.P., the State contends the mother's rule 1.904(2) motion following the juvenile court's permanency order was not proper and, therefore, did not toll the period for filing notice of appeal.  Consequently, according to the

State, the notice of appeal was untimely and the appellate courts have no jurisdiction to hear the appeal. The State is correct that the rule 1.904(2) motion was filed just within the fifteen-day deadline following the filing of the permanency order. The juvenile court filed its order partially granting the rule 1.904(2) motion about two weeks later. The mother filed her notice of appeal within the fifteen-day deadline following that. If the rule 1.904(2) motion was not proper, the notice of appeal was untimely.[2]

> When a rule 1.904(2) motion amounts to nothing more than a rehash of legal issues previously raised, we will conclude the motion does not toll the time for appeal. By contrast, when used to obtain a ruling on an issue that the court may have overlooked, or to request the district court enlarge or amend its findings when it fails to comply with rule 1.904(1), the motion is proper and will toll the time for appeal.

*Baur*, 832 N.W.2d at 668-69. In her rule 1.904(2) motion, the mother requested the court include certain findings of fact based on evidence presented to it during the hearing. It also largely stated general objections to the court's conclusions and orders. In the court's ruling on the rule 1.904(2) motion, the court stated:

> Having reviewed [the motion and attached exhibits], the Court partially grants Mother's Motion as follows:

---

[2] Our supreme court recently explained how an improper rule 1.904(2) motion affects appellate jurisdiction:
> Iowa Rule of Appellate Procedure 6.101(1) provides that a notice of appeal must ordinarily be filed within thirty days of the filing of the district court's final order or judgment. Iowa R. App. P. 6.101(1)(b ). In the event a party files a timely motion under Iowa Rule of Civil Procedure 1.904(2), however, rule 6.101 authorizes the filing of a notice of appeal within thirty days of the filing of the district court's ruling on the rule 1.904(2) motion. *Id.* We have previously explained that a failure to file a timely notice of appeal leaves us without subject matter jurisdiction to hear the appeal. *Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 771 (Iowa 2009).

*Baur v. Baur Farms, Inc.*, 832 N.W.2d 663, 668 (Iowa 2013).

Paragraph 14 of the Court's permanency order is hereby enlarged to indicate mother successfully completed the Adams Alcohol/Other Drug addiction (AODA) treatment program.

The rest of Mother's motion is denied as it simply sets forth her disagreement with the Court's findings or regurgitates information already presented to the Court, which is not the purpose of a Rule 1.904 motion. Accordingly, all other provisions of the permanency order shall remain in effect.

Thus, the mother's motion was successful insofar as it sought and obtained an enlargement of the court's findings of fact. As such, we conclude the rule 1.904(2) motion was proper and, therefore, it tolled the time for filing the notice of appeal. We have jurisdiction to hear the appeal of the permanency order.

2. Merits.

Appellate review of a permanency order is de novo. *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003). Weight is given to the juvenile court's findings of fact, but this court is not bound by them. *Id.* The child's best interests are our paramount concern. *Id.*

a. *Transfer of Custody to Father.*

The mother contends the juvenile court erred in transferring custody of S.P. to her father. The mother argues the court should have ordered more services for her and extended permanency for six months to allow her time to reunify with S.P. In its permanency order, the juvenile court reviewed the mother's extensive history with drugs, her periods of incarceration, and the long history of DHS intervention in the family. The court found despite this long history and provision of services, the mother "did not take full advantage of the services being provided to her and progress was slow to nonexistent." At the permanency hearing, the mother presented evidence of the father's extensive

criminal history which included a charge of operating while intoxicated he incurred after S.P. was placed in his care. For the reasons stated above in relation to A.B., we find the juvenile court was correct. The mother has been involved with DHS and received services since the birth of her first child years ago; she has made little to no progress addressing the same substance abuse issues that occurred at that time; and she has failed to cooperate with services for herself and for the children. Although previous to this case the father had never had sole care of S.P., the court placed S.P. with him in July 2014. He successfully completed a thirty-day at-home trial placement and has had custody of S.P. since that time. The juvenile court found

> Reports from the Department, guardian ad litem, and [court-appointed special advocate] CASA volunteer indicate that the child is doing well in the care of her father. No behavioral concerns are noted and the school reports that the child is doing well academically and continues to make improvements. Certainly, father is not without his own faults and baggage. In a prior order, the Court noted its concern regarding an OWI father received shortly after [S.P.] was placed with him. Despite this, father has continued to cooperate with services, he has demonstrated his dedication to the child, and no concerns have been noted despite frequent drop-ins and supervision by the Department, service providers, guardian ad litem, and CASA. The Court believes continued oversight by the Department is appropriate but that father has satisfactorily demonstrated his ability to care for the child.

Transfer of custody to the father, who was in a position to care for S.P. and had been doing so, was appropriate. Giving the mother an extension of six months would have been inappropriate for the same reasons it was inappropriate to delay termination in A.B.'s case.

*b.*     *Best Interest of the Child.*

The mother also contends the State failed to prove the transfer of custody was in S.P.'s best interest. She makes no argument as to why it was not in S.P.'s best interest. She lists a number of faults of the father that, in her view, make him an unsuitable placement. DHS, the guardian ad litem, and the CASA have all reported S.P. is doing well in his care. In contrast, the mother has made little to no progress despite years of services.

On our review of the case progress reports, DHS reports to the court, and CASA reports, we agree with the juvenile court's findings. In considering best interests we focus on the child's safety; the best placement for furthering the child's long-term nurturing and growth; and the child's physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). There is a rebuttable presumption that the child's best interests are served by parental custody. *K.C.*, 600 N.W.2d at 32. The court's order placed S.P. in parental custody. The mother is not in a position to foster S.P.'s long- or short-term nurturing and growth; her inability or unwillingness to address her substance abuse issues renders her unable to meet S.P.'s physical, mental, and emotional needs. S.P.'s father is meeting her needs; this is evident in the good reports of how well she is doing academically and behaviorally. Despite years of services, the mother is not in a position to care for S.P., and transfer of custody to the father is in S.P.'s best interest.[3]

---

[3] We note further that the court has on multiple occasions found there is a strong bond between the mother and S.P. There is no plan at this time to progress toward a termination of the mother's parental rights to S.P.

The mother also complains the State failed to show the child could not be returned to her home. She presents no argument and cites no authority or reference to the record in support of her claim. We, therefore, consider the argument waived. *See Hollingsworth v. Schminkey*, 553 N.W.2d 591, 596 (Iowa 1996) ("When a party, in an appellate brief, fails to state, argue, or cite to authority in support of an issue, the issue may be deemed waived"); *Hyler*, 548 N.W.2d at 876 ("we will not speculate on the arguments [appellant] might have made and then search for legal authority and comb the record for facts to support such arguments"); *State v. Mann*, 602 N.W.2d 785, 788 n.1 (Iowa 1999) (the appellant's "mention of an issue, without analysis, argument or supporting authority in insufficient to prompt an appellate court's consideration").

> c.      *Failure to Make Reasonable Efforts to Keep Siblings Together.*

The mother contends the district court erred in failing to make reasonable efforts to keep A.B. and S.P. together in one placement. Siblings should be kept together whenever possible. *See In re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982); Iowa Code § 232.108(1). However, the court's best-interest consideration focuses on the child's safety; the best placement for furthering the child's long-term nurturing and growth; and the child's physical, mental, and emotional condition and needs. See *P.L.*, 778 N.W.2d at 37. To achieve this goal, separation of siblings may be allowed. *See* Iowa Code § 232.108(4) (allowing court to suspend visitation when required by well-being of the sibling). The mother has not complained about A.B.'s placement. She complains only that the court's placement of S.P. with the father will impair the sibling bond.

Throughout most of this case, the mother has had visitation with A.B. and S.P. together. The record indicates the children continued to have sibling visitation after the entry of the termination and permanency orders. The record is not clear as to whether the court ordered continuing sibling visitation. Nonetheless, we have determined the placement of S.P. with her father is in her best interest; this is particularly so because S.P. has the opportunity to be raised by her own parent, rather than a relative. Thus, separating the siblings by transferring custody of S.P. to her father is justified under the circumstances. The juvenile court did not err in separating the children's placements.

**IV.     CONCLUSION.**

We find termination of parental rights to A.B. was appropriate; DHS made reasonable efforts toward reunifying the children with the mother; additional time would not have been appropriate; the court's placement of S.P. with her father is in her best interest; and justifiable cause exists to separate the placements of the siblings. We affirm both the termination order and the permanency order.

**AFFIRMED.**