# IN THE COURT OF APPEALS OF IOWA

No. 18-1514
Filed December 19, 2018

**IN THE INTEREST OF J.C.,**
**Minor Child,**

**M.S., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A father appeals the termination of his parental rights to his child. **REVERSED.**

Jeremy Feitelson of Nelsen & Feitelson Law Group, PLC, West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Kayla Stratton of Des Moines Public Defender Office, Des Moines, guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

A father appeals the termination of his parental rights to his child, born in mid-January 2018.[1]  He contends (1) the State failed to prove he abandoned the child, (2) termination was not in the child's best interests, and (3) the district court should have granted him an additional six months to facilitate reunification.  There is a more fundamental problem: the State failed to serve the father with notice of the child-in-need-of-assistance petition.

## I.    *Background Proceedings*

The child was born with methamphetamine in her system.  Twelve days after the birth, the mother consented to temporary removal of the child.  The child was placed with maternal relatives, where she remained throughout the proceedings.

On the date of removal, the State also filed a child-in-need-of-assistance petition.  The petition alleged the mother was uncertain about the father's identity but had "narrowed it to one of two people."  The petition named the two people and made reference to their criminal histories.  One of the people turned out to be the biological father.

Two hours after the State filed the child-in-need-of-assistance petition, it also filed the biological father's criminal history.  The document listed his offender number; birth date; and temporary discharge date, which was six months later.

In time, the State filed an amended and substituted petition, repeating the names of the two people believed to be the child's father.  Shortly thereafter, the

---

[1] The mother's parental rights to the child were also terminated; she does not appeal.

district court entered an order confirming the child's removal from the mother's custody. The mother received a copy of the order; the father did not. Nor did the father receive a copy of an adjudication order entered five weeks after the child's removal.[2] There is no indication the child-in-need-of-assistance petition or amended petition was served on the biological father.

Two months after the child's removal, the department of human services filed a report listing the father's full name as "unknown," notwithstanding its prior identification of the putative fathers. Two-and-a-half months after the removal, the district court filed an order directing the biological father to undergo a paternity test. The test was not administered until mid-June 2018, five months after the child's birth.

About ten days later, the State filed a petition to terminate parental rights. The father was served with the termination petition, although he had yet to receive confirmation of the paternity test result. On July 6, the department formally notified him of the result, which established him as the child's father. The termination hearing was held on August 3, less than a month after the father learned he was indeed the father. Following the hearing, the district court granted the petition. The father appealed.

## II.    *Notice*

Many of the pertinent principles governing notice to a parent in a child-in-need-of-assistance proceeding were summarized in a prior unpublished opinion of this court. *See In re A.L.*, No. 14-0428, 2014 WL 2432421, at *1–2 (Iowa Ct. App.

---

[2] The portions of both orders directing the clerk to provide a copy to others was left blank.

May 29, 2014). As we stated, "'Notice of the hearing and an opportunity to be heard appropriate to the nature of the case is the most rudimentary demand of due process of law' in proceedings affecting parental rights to children." *Id*. at *1 (quoting *In re S.P.*, 672 N.W.2d 842, 845 (Iowa 2003)); *see also Callender v. Skiles*, 591 N.W.2d 182, 189 (Iowa 1999) ("Due process must be afforded when an individual is threatened by state action which will deprive the individual of a protected liberty or property interest."). "Notice in child neglect and dependency proceedings is jurisdictional." *S.P.*, 672 N.W.2d at 845 (quoting *In re Hewitt*, 272 N.W.2d 852, 855 (Iowa 1978)). Without notice to a parent, a judgment is void. *Id*. at 846.

"A void judgment is subject to attack at any time." *Id*. Error preservation concerns are not an impediment. *Id*. We may consider jurisdictional issues on our own motion. *See Osage Conservation Club v. Bd. of Supervisors*, 611 N.W.2d 294, 298–99 (Iowa 2000) (stating failure to raise issue of void agency decision on certiorari did not preclude appellate court from considering issue on its own motion).

On our de novo review of the record, we raise and address the question of whether the father received notice of the child-in-need-of-assistance action on our own motion. Although the issue implicates due process concerns, we consider the issue under pertinent statutory authority.

The State is obligated to serve the child-in-need-of-assistance petition "in the same manner as for adjudicatory hearings in cases of juvenile delinquency as provided in section 232.37." Iowa Code § 232.88 (2018). Section 232.37 requires service "upon the known parents . . . of a child" and requires the service to be

"made personally by the sheriff" or, if the court determines personal service is impracticable, by certified mail. *Id.* at § 232.37(1), (4). Hearings may not take place without a parent except if the parent "fails to appear after reasonable notification" or "if the court finds that a reasonably diligent effort has been made to notify the child's parent." *Id.* at § 232.38(1); *see also id.* at §§ 232.112(1) ("[N]otice [of termination petitions] may be dispensed with in the case of any such person whose name or whereabouts the court determines is unknown and cannot be ascertained by reasonably diligent search."); 232.88 ("[N]otice shall be waived regarding a person who was notified of the adjudicatory hearing and who failed to appear."). A diligent search "is measured not by the quantity of the search but the quality of the search." *Qualley v. State Fed. Sav. & Loan*, 487 N.W.2d 353, 355 (Iowa Ct. App. 1992).

> While a reasonable search does not require the use of all possible or conceivable means of discovery, it is an inquiry that a reasonable person would make, and it must extend to places where information is likely to be obtained and to persons who, in the ordinary course of events, would be likely to have information of the person or entity sought.

*Id.*

As of the date the State filed the child-in-need-of-assistance petition, the department knew the father's name and key identifying details such as his date of birth and offender number. Despite this knowledge, the agency took no steps to notify the father of the child-in-need-of-assistance petition or impending proceedings. The department chose to do nothing until after the adjudicatory order was entered.

At that juncture, the agency elected to perform sequential rather than simultaneous paternity tests of the two putative fathers; the biological father's paternity test was not ordered until after the other man was ruled out as the father. By this time, all that remained in the child-in-need-of-assistance proceeding was a dispositional hearing, which took place a day later.

The order for paternity testing was the first notice the father was sent with the caption of the pending child-in-need-of-assistance action. Two months later, the State filed an "affidavit of diligent search" attesting to various means used to locate the father. The affidavit did not indicate the dates on which those efforts were made. There was also no indication the affiant contacted the department, the father's probation officer, the father's mother, the relatives with custody of the child, or the child's mother, who the father saw four days before the date of the attestation. The affidavit characterized the father as a "fugitive from justice out of Polk County." He was arrested the next day.

There is scant if any indication the father had actual knowledge of the child-in-need-of-assistance proceedings before his arrest. He knew of the mother's pregnancy, knew during the pregnancy that he might be the father, and knew of the child's birth. But he did not know until almost five months after the child's birth that the other putative father was not the father. As noted, the department formally notified him of his paternity test result just three-and-a-half weeks before the termination hearing. The department case manager conceded that, although the child's mother identified the father "[v]ery early on," she did not attempt to reach him until the other putative father was eliminated as a parent. She also conceded, "He did call me back and leave voicemails." Although she stated she returned his

calls, she admitted it was not her practice to leave any details about the case. The case manager's testimony about her contacts with the father beg the question of why these contacts were not made at the time the petition was filed.

Even if the father had actual knowledge of the child-in-need-of-assistance proceeding, that fact "did not obviate the need to provide formal notice, absent some participation by" him in those proceedings. *A.L.*, 2014 WL 2432421, at *2 (citing *State v. Kaufman*, 201 N.W.2d 722, 724 (Iowa 1972) ("Actual notice . . . is no substitute for service of notice according to statute.")); *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915) ("Nor can extra-official or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that the Constitution requires."). There is no evidence he participated in the proceedings.

It is true the father was served with the termination petition, was appointed counsel in the termination action, and testified at the termination hearing. But his participation in that proceeding cannot be construed as a waiver of his right to notice of the underlying child-in-need-of-assistance action because he was not aware of that action. *See Hewitt*, 272 N.W.2d at 857 ("[T]he notice must be given sufficiently in advance of the court proceedings."); *cf. In re J.S.*, 386 N.W.2d 149, 152 (Iowa Ct. App. 1986) (noting father intervened in child-in-need-of-assistance proceedings and "acquiesced to the jurisdiction of the court for ten months"). Participation in those proceedings is crucial for any parent seeking to maintain a relationship with a child because child-in-need-of-assistance proceedings "can be the first step toward termination." *Hewitt*, 272 N.W.2d at 857.

The agency's failure to notify the father of the child-in-need-of-assistance proceedings prevented him from being heard in the child-in-need-of-assistance action and rendered the proceeding void as to him.  *See S.P.*, 672 N.W.2d at 848.

The opinion could end here.  But, as stated in *In re A.L.*, this court has reached the merits of an appeal notwithstanding the absence of notice.  *See* 2014 WL 2432421, at *2 (citing *In re M.L.M.*, 464 N.W.2d 688, 690–91 (Iowa Ct. App. 1990)).  Accordingly, we do so here.

### III.    *Abandonment*

The district court concluded the father abandoned his child.  Abandonment requires proof of "both the intention to abandon and the acts by which the intention is evidenced."  Iowa Code § 232.2(1).

Although the father was aware he might be a parent, his paternity was not established until shortly before the termination hearing.  After being served with the termination petition, the father had his mother and his attorney contact the department.  The father also appeared at the termination hearing and testified that he wished to maintain a relationship with the child.

We conclude an intent to abandon the child was not established.  In light of our conclusion, we need not reach the remaining two issues raised by the father.

### IV.    *Disposition*

We reverse the termination decision as to the father.  Because the mother did not appeal the termination decision, the ruling is final as to her.

**REVERSED.**

McDonald, J., concurs but writes separately; Vogel, P.J., dissents.

**McDONALD, Judge** (writing separately)

Judge Vaitheswaran and I agree the State failed to meet its burden of proof in establishing the father abandoned the child. My colleague and I part ways on the issue of notice, and I thus write separately.

I.

"[T]he relationship between parent and child is constitutionally protected." *Quilloin v. Walcott,* 434 U.S. 246, 255 (1978). That relationship may be terminated only when the State has proved by clear and convincing evidence the statutory ground authorizing the termination of the parent's rights. *See* Iowa Code § 232.117(2) (2018); *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. It is the highest evidentiary burden in civil cases." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016) (citation omitted). "Evidence is 'clear and convincing' when there are no 'serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence.'" *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

Here, the father supported the mother during her pregnancy and encouraged the mother to retain a healthy and drug-free lifestyle. The father visited the child in the hospital following her birth despite the uncertainty of the child's paternity at that time. The father's belief he might be the biological father was negated when the other putative father presented the father with paperwork and claimed paternity. The mother fostered the father's belief that he was not the biological father. The father's testimony on these points is not refuted. The father

was notified he was the biological father of the child less than one month prior to the termination hearing. Once the father was made aware of his status as the biological father, the father attempted to engage the department of human services through his attorney and mother so that he could develop a relationship with the child. Given the short time between the notification of paternity and the father's attempts to establish contact with the child, there is not clear and convincing evidence establishing abandonment.

## II.

I respectfully disagree with my colleague's discussion of the issue of notice. The issue of notice is not properly before this court. The father did not raise the issue on appeal. I disagree with the decision to assume the role of advocate and advance claims on a litigant's behalf. That is not this court's role. The court of appeals is a court of error correction. *See* Iowa Code § 602.5103(1) (providing the court of appeals "constitutes a court for the correction of errors at law"). "Our obligation on appeal is to decide the case within the framework of the issues raised by the parties." *Feld v. Borkowski*, 790 N.W.2d 72, 78 (Iowa 2010). "This court is not a roving commission that offers instinctual legal reactions to interesting issues that have not been raised or briefed by the parties and for which the record is often entirely inadequate if not completely barren. We decide only the concrete issues that were presented, litigated, and preserved in this case." *City of Davenport v. Seymour*, 755 N.W.2d 533, 545 (Iowa 2008).

In addition to not being raised by the parties on appeal, the issue is not preserved for appellate review. The father did not raise the issue in the district court. Indeed, the father's counsel did not object when the prosecutor asked the

juvenile court to take judicial notice of the files in the assistance proceeding. An error must be preserved before it can be addressed on appeal. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (finding due process claim in a termination of parental rights appeal waived because "[e]ven issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal"); *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Finally, as a matter of sound judicial administration, there is no reason to raise this issue sua sponte when a majority of this panel agrees there is insufficient evidence to sustain the termination of this father's parental rights. As my colleague notes, her discussion of the notice issue is wholly immaterial to the resolution of this particular case. The entire discussion is obiter dictum. In raising issues sua sponte, the "court[] risk[s] making unsound decisions based on [its] own inadequately informed understanding of the . . . questions involved." *State v. Childs*, 898 N.W.2d 177, 194 (Iowa 2017) (Hecht, J., dissenting).

Even if the issue were properly before the court, I disagree with my colleague on the merits of the issue. Contrary authority holds the lack of notice does not constitute reversible error. In *In re M.L.M.*, the juvenile court terminated a father's parental rights, finding the father abandoned the children. *See* 464 N.W.2d 688, 689 (Iowa Ct. App. 1990). The father argued the termination order should be vacated because he did not receive notice of the child-in-need-of-assistance proceeding. *See id.* at 690. This court agreed the father should have received notice of the assistance proceeding. *See id.* However, we held the failure

to receive notice of the assistance proceeding was immaterial to the termination order. *See id.* Critically, we recognized that termination "for desertion under section 232.116(1)[(b)] does not require a previous child-in-need-of-assistance proceeding or offering of services to assist with parenting" as a necessary element. *See id.* at 691. This court affirmed the order terminating the father's parental rights. *Id.*

As a published opinion, *M.L.M.* is controlling authority. *See Webster v. State*, No. 17-0539, 2018 WL 3873411, at *2 n.4 (Iowa Ct. App. Aug. 15, 2018) (recognizing a published opinion of this court serves as controlling authority that binds this court); *compare* Iowa R. App. P. 6.904(2)(a) (describing published opinions as "legal authorities"), *with* Iowa R. App. P. 6.904(2)(c) (clarifying "[u]npublished opinions or decisions shall not constitute controlling legal authority"). One panel of this court is not at liberty to overrule or ignore a prior controlling panel opinion of this court.

For the past twenty-eight years, our unpublished decisions have continued to follow *M.L.M. See In re S.N.*, No. 12-1236, 2012 WL 4101813, at *1 (Iowa Ct. App. Sept. 19, 2012) ("However, failure to include the father in the child-in-need-of-assistance proceeding does not require a reversal of the termination. The father received notice of the termination proceeding." (citation omitted)); *In re B.M.M.*, No. 11-0203, 2011 WL 1376882, at *2 (Iowa Ct. App. Apr. 13, 2011) ("Even if the father was not properly notified of the permanency hearing, he does not assert that he received inadequate notice of the termination proceedings that followed. Indeed, his attorney appeared at two termination hearings scheduled in August and December 2010 and vigorously defended the father's interests. For that

reason, we conclude any possible inadequacy with the notice of the March 17 hearing was not prejudicial."); *In re E.P.*, No. 10-1216, 2010 WL 3894581, at *2 (Iowa Ct. App. Oct. 6, 2010) ("Furthermore, the father received notice of the termination petition and hearing, was present at the hearing, and represented by counsel.  The State's failure to personally serve him notice of the [child-in-need-of-assistance] proceedings does not require a reversal of the termination . . . ."); *In re J.P.*, No. 07-0226, 2007 WL 1202710, at *1 (Iowa Ct. App. Apr. 25, 2007) (affirming termination order despite lack of notice of assistance proceeding).

My colleague offers no reason to deviate from nearly three decades of practice, and I see no reason.  In my view, *M.L.M.* was correctly decided.  In arguing for a contrary conclusion, my colleague relies on "pertinent principles governing notice to a parent in a *child-in-need-of-assistance proceeding.*" (Emphasis added.)  My colleague then concludes that "[w]ithout notice to a parent, a judgment is void."  This argument and conclusion both fail to appreciate that an assistance proceeding and a termination proceeding are separate and distinct.  A child-in-need-of-assistance proceeding is initiated by filing a petition pursuant to section 232.87.  The final order in an assistance proceeding is the dispositional order issued pursuant to section 232.99.  *See* Iowa Code §§ 232.99-232.102 (setting forth requirements of disposition and dispositional options); *In re Long*, 313 N.W.2d 473, 476 (Iowa 1981) (holding dispositional order is a final order).  In contrast, a termination proceeding is initiated by filing a separate petition pursuant to section 232.111.  The final order in a termination proceeding is a separate dispositional order entered pursuant to section 232.117.  Thus, even assuming my colleague is correct in stating that the lack of notice in an assistance proceeding

renders a judgment "void" (versus voidable), the "void" judgment would be only the dispositional order in the assistance proceeding and not the termination order in the termination proceeding.

Consider the issue further. Here, the juvenile court terminated the father's parental rights pursuant to section 232.116(1)(b). Under that section, the juvenile court can terminate a parent's rights upon "clear and convincing evidence that the child has been abandoned or deserted." Iowa Code § 232.116(1)(b). There is no requirement that a child first be adjudicated in need of assistance prior to termination under section 232.116(1)(b). *Cf.* Iowa Code § 232.116(1)(d), (e), (f), (g), (h), (j), (k), (*l*), (m), (n) (all requiring proof the child was adjudicated in need of assistance as an element of termination). If there is no requirement that a child be adjudicated in need of assistance prior to termination of parental rights pursuant to section 232.116(1)(b), then the State need not initiate an assistance proceeding prior to seeking termination on that ground. Why should the termination order be set aside on the ground the father failed to receive notice of a proceeding the State is not even required to hold and that is not a prerequisite to termination of parental rights? Under the controlling case of *M.L.M.*, it should not. I see no reason to ignore long-standing, controlling precedent.

**VOGEL, Presiding Judge** (dissenting)

I concur with section II of Judge McDonald's well-reasoned special concurrence that the issue of notice is not properly before this court. As Judge McDonald writes, "I disagree with the decision to assume the role of advocate and advance claims on a litigant's behalf." However, I write separately to make a parallel argument on the merits of this case—abandonment. Why should this court reach the merits when those merits were also not challenged either before the district court or on appeal?

The father was alleged to have abandoned his daughter under Iowa Code section 232.116(1)(b) (2018). At the termination hearing, the father made no assertion that he did not abandon the child nor set forth any facts upon which he could challenge the State's allegation. In his testimony, he discussed his relationship with the mother, his living situation, his incarceration, his drug and alcohol addictions, his mental-health challenges, and his hopes for a better future. Nevertheless, he said nothing on the issue of abandonment. On appeal, the extent of his abandonment argument is: "The Appellant made record at the time of the termination trial regarding Appellant's resistance to the entry of an order terminating his parental rights. The Appellant filed a timely notice of appeal." Under our appellate procedure rules, that is insufficient.

Iowa Rule of Appellate Procedure 6.201(1)(d) provides the contents of a petition on appeal "shall substantially comply with form 5 in rule 6.1401." Paragraph eight of that form, "Petition on Appeal (Cross-Appeal) (Child-in-Need-of-Assistance and Termination Cases)," instructs the appellant to:

> State the legal issues presented for appeal, including a statement of how the issues arose and how they were preserved for appeal. Also, state what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal:
>
> *The issue statement should be concise in nature setting forth specific legal questions. General conclusions, such as "the trial court's ruling is not supported by law or the facts" are not acceptable. Include supporting legal authority for each issue raised, including authority contrary to appellant's case, if known.*

Iowa R. App. P. 6.1401 (emphasis added).

In *In re J.A.D.-F.*, we found the mere assertion the State failed to meet its burden was "little more than saying, 'I appeal.'" 776 N.W.2d 879, 884 (Iowa Ct. App. 2009). "With precious little guidance, this court is essentially forced to divine what the [appellant] believes supports the issues he [or she] raises." *Id.* Here, the father provided even less guidance than the appellant in *J.A.D.-F.* because the father's petition only states he made a record and filed a timely notice of appeal. Our appellate courts are not to delve into the district court file and search for facts, essentially assuming a partisan role and advocating for a party who fails to properly pursue an appeal. *See Inghram v. Dairyland Mut. Ins. Co.,* 215 N.W.2d 239, 239–40 (Iowa 1974) (dismissing appeal because of "wholesale failure to comply with our appellate rules," and refusing to reach the merits of the case as such action "would require us to assume a partisan role and undertake the appellant's research and advocacy"); *see also Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (holding a "broad, all-encompassing argument is insufficient to identify error as required for our de novo review").

In this case, the father neither contested abandonment at the termination hearing nor effectively raised it on appeal, and, pursuant to our long-standing case

law and rules of appellate procedure, we therefore should not address it. *See Hollingsworth v. Schminkey*, 553 N.W.2d 591, 596 (Iowa 1996) ("When a party, in an appellate brief, fails to state, argue, or cite authority in support of an issue, the issue may be deemed waived."); *Soo Line R. Co. v. Iowa Dept. of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (holding the "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration"); *see also* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). An issue not properly raised should not provide a basis to reverse on appeal.

Therefore, I would affirm the district court's termination of the father's parental rights in its entirety.